UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
IN RE EX PARTE APPLICATION OF    :      24 MC 575 - LJL
NAVIOS SOUTH AMERICA          :
LOGISTICS INC.                  :
-------------------------------------------------------X

## NAVIOS SOUTH AMERICAN LOGISTICS INC.'S
## RESPONSE TO ORDER TO SHOW CAUSE (ECF NO. 14)

By and through its undersigned counsel, Petitioner Navios South American Logistics Inc. submits this response to the Order dated December 23, 2024 (ECF No. 14) requiring it to show cause why interventions should not be granted.

## **INTRODUCTION**

Before the Court is an Order to Show Cause on a motion to intervene by Claudio Pablo Lopez and Carlos Augusto Lopez (the "Lopezes" or "Proposed Intervenors"). ECF No. 14. The motion seeks intervention in this discovery proceeding commenced by the Petitioner, Navios South American Logistics Inc. ("NSAL," "Company," or the "Petitioner") pursuant to 28 U.S.C. § 1782 ("Section 1782").

NSAL does not oppose intervention. Considering the assertions set forth in the Lopezes' motion to intervene, however, NSAL sets forth herein critical factual context such that the Court may meaningfully consider the Proposed Intervenors' proposed motions to vacate the Ex Parte Order issued pursuant to Section 1782 and to quash subpoenas issued thereunder. *See*, ECF No. 12.

As set forth in detail in the complaint filed in its Marshall Islands lawsuit against the Lopezes, ("Marshall Islands Complaint"), over at least a ten-year period, the Lopezes are alleged to have engaged in multiple schemes to defraud NSAL out of millions of dollars. *See* accompanying Declaration of Israel David ("David Decl."), ¶ 4. *See also* Exhibit 1 to the Declaration of Kevin J. Lennon ("Lennon Decl."), ECF No. 3. NSAL's Marshall Islands Complaint details that unfortunate narrative of deceit, theft, and fraud, but NSAL will not burden the Court with a comprehensive

rehash here.  The Lopezes' alleged fraud, however, goes to the very heart of NSAL's application

pursuant to Section 1782, and their present motion to intervene is an attempt to thwart NSAL from

obtaining discovery relating to their fraudulent activities.

<u>**STATEMENT OF THE FACTS**</u>

 **A. The Lopezes Schemes to Defraud NSAL and the Marshall Islands Proceeding**

  The Lopezes orchestrated three separate schemes against NSAL: the Fraudulent Invoices

Scheme the Bunker Fuel Scheme and the Personal Piggybank Scheme.  A summary of each scheme

is set forth in the accompanying Declaration of Israel David.

  The Fraudulent Invoices Scheme was implemented at the Lopezes' direction.  This scheme

involved a small handful of individuals at NSAL and/or its subsidiaries, who were instructed to make

enormous amounts of NSAL cash available to the Lopezes and their family members.  David Decl.

¶ 5.  These individuals concealed the illicit cash payments to the Lopezes and their family members

by generating a fictitious invoice and presenting them to NSAL for payment.  *Id.*  The amount NSAL

paid on each invoice would cover the illegitimate payment to the Lopezes and their family members,

as well as a fee for their "fixer" for facilitating the payment.  *Id.*  An employee of NSAL or one of its

subsidiaries would issue company check made out to an individual who would make an in-person

cash withdrawal at the bank.  *Id.* ¶ 5.  The cash was then sent through a money exchange to Buenos

Aires for the benefit of the Lopezes and their family members.  *Id.*  To conceal this fraud, the Lopezes

directed employees to record the transactions as purported payments to vendors.  *Id.* ¶ 7.  In reality,

no such legitimate payments were actually made.  *Id.*   The forged invoices were created by altering

legitimate vendor invoices to reflect fictitious scopes of work and associated charges equaling the

exact amounts withdrawn from the company for the illicit payments to the Lopezes. *Id.*

Additionally, certain fake invoices were issued by a handful of the company's vendors who conspired with the Lopezes by permitting them to generate invoices for fictitious work that was never performed. *Id.* ¶ 8. As with the forged invoices, the fake invoices falsely reflected the misappropriated payments in cash to the Lopezes as expenses for company projects. *Id.* In certain instances, to evade NSAL's practices and processes, the Lopezes and other members of their family instructed company employees to create fictitious purchase orders as pretext for the fake invoices. *Id.*

Between 2015 and 2020, the Lopezes looted at least approximately $8.2 million in company funds through the Fraudulent Invoices Scheme. *Id.* ¶ 9. NSAL's investigation into the Fraudulent Invoices Scheme is still ongoing and may well reveal further extensive misconduct and misappropriation by the Lopezes including for periods prior to 2015. *Id.*

The Lopezes also authorized and permitted Maria Lopez, Claudio Lopez's daughter and Carlos Lopez's niece, to share NSAL's confidential information regarding bunker fuel supplier bids with Ms. Lopez's husband's company, one of the fuel suppliers. In doing so, the Lopezes authorized and permitted the company's fuel bidding process to be corrupted and rigged in favor of Ms. Lopez's husband's company. *Id.* ¶ 10. This in turn caused the company to receive substandard and insufficient services from this supplier and to incur losses based on the terms of the contracts with this supplier (the "Bunker Fuel Scheme"). *Id.*

Finally, the Lopezes also employed a "Personal Piggybank Scheme" which involved using NSAL's "petty cash" and other accounts for luxury personal and family expenses unconnected to NSAL's business. This included expensive cigars, high-end personal transportation expenses, a specialized washing machine designed to launder horse blankets, robot vacuum cleaners, a clothes dryer, and other expenses for miscellaneous and unauthorized personal goods and services. *Id.* ¶ 11.

The foregoing summary of the Lopezes' fraud schemes against NSAL are laid out in detail in the Marshall Islands Complaint. *See*, Lennon Decl., ECF No. 3.

**B.       The Uruguay Proceeding**

While studiously ignoring the serious fraud allegations against them, in their "Memorandum of Law in Support of Proposed Intervenors' Motion to Intervene, Lodge Objections and Stay the Subpoenas" ("Lopezes' Memo of Law"), the Lopezes' misapprehend the nature of this proceeding pursuant to Section 1782, while making false claims of forum shopping by NSAL.  In doing so, they wrongly contend that the matter involves a shareholder dispute between NSAL's majority shareholder and its minority shareholder, Peers Business Inc. – purportedly beneficially owned by the Lopezes.  *See*, Lopezes' Memo of Law at 1.  These contentions are patently incorrect.

According to the Lopezes, NSAL's Marshall Islands Complaint was filed in a forum shopping exercise after the Lopezes commenced an action against NSAL in Uruguay (the "Uruguay Proceeding").  *See*, Lopezes' Memo of Law at 3.  That assertion is false.  NSAL was unaware of the Uruguay Proceeding when it filed the Marshall Islands Lawsuit on November 27, 2024.  *See*, David Decl. ¶ 12.  NSAL first learned of the *ex parte* Uruguay Proceeding on December 3, 2024,[1] when the Uruguay court issued an order on notice to NSAL requiring NSAL to produce certain of its books and records to Claudio Lopez and Peers.  *Id.*

The Lopezes have no claim (or counterclaim) against NSAL.  Rather, as they admit in their Memorandum of Law, there is a shareholder dispute between the majority and minority shareholders of NSAL.  That dispute does not involve NSAL itself.  In relation to the shareholder dispute, Claudio Lopez and Peers (the actual NSAL minority shareholder) have argued in the Uruguay Proceeding for the production of NSAL's books and records to investigate whether they might have a claim against one or more NSAL directors arising from an August 1, 2024, refinancing transaction relating to the company's debt.  *See*, David Decl. ¶ 14.  The refinancing transaction involved a subordinated loan

---

[1] The Lopezes admit that NSAL was not served in the Uruguay Proceeding until December 3, 2024.  *See* Declaration of Anne Salisbury submitted to the Marshall Islands High Court, annexed hereto as Exhibit A.

made by an entity affiliated with NSAL's Chairwoman – which Claudio Lopez and Peers claim may serve to dilute their minority interest in NSAL if the subordinated loan is converted into common stock of NSAL. *Id.*

The shareholder dispute does not involve NSAL itself – and more importantly, is totally unrelated to NSAL's fraud claims against the Lopezes, as set forth in the Marshall Islands Complaint. Thus, the Lopezes appear to be using the shareholder dispute in an ill-advised attempt to distract attention from NSAL's fraud allegations – and to create the impression that the Lopezes have counterclaims against NSAL in circumstances where none exist.

### C.     The Marshall Islands Lawsuit

While the Lopezes complain that NSAL has commenced the Marshall Islands lawsuit in a forum shopping exercise, or in retaliation for the Uruguay Proceeding, those contentions are as false as they are non-sensical. NSAL is a Marshall Islands company. The Lopezes were officers and directors of the Company during the period they committed fraud against NSAL. NSAL's filing suit against the Lopezes in the Marshall Islands was therefore not only logical from a jurisdictional standpoint, but it was also filed for the most obvious of reasons: to obtain monetary relief for the enormous losses it suffered as a result of the Lopezes' fraudulent schemes. *See*, David Decl. ¶ 18.

Moreover, NSAL's response to the Uruguay proceeding commenced by Claudio Lopez and Peers concerning NSAL's book and records in relation to the shareholder dispute[2] is irrelevant to the issues before this Court, the sole purpose of which is for NSAL to obtain discovery pursuant to Section 1782 for use in the Marshall Islands lawsuit.

---

[2] The claims Claudio Lopez and Peers *may* assert – whether in the Uruguay Proceeding or the Marshall Islands lawsuit – are not properly claims or counterclaims that can be brought against NSAL. *See*, David Decl. ¶¶ 25-32.

## ARGUMENT

### I.    INTERVENTION IS NOT OPPOSED

NSAL does not oppose the Lopezes' proposed intervention.  As targets of the subpoenas issued under Section 1782, the Lopezes have standing to challenge the Court's power to issue the subpoenas under the terms of the statute.  *In re Hornbeam Corp.*, 2015 U.S.Dist.LEXIS 142361 (S.D.N.Y. Sep. 17, 2015)(quoting *In re Application of Sarrio, S.A.*, 119 F.3d 143, 148 (2d Cir. 1997)).

### II.    THE MARSHALL ISLANDS COURT'S JURISDICTION IS NOT RELEVANT

The Lopezes complaint that NSAL "fails to mention that there is no jurisdiction over the Lopezes in the foreign proceeding they commenced in the Marshall Islands."  *See*, Lopezes' Memo of Law at 5.  This assertion is incorrect as a matter of fact and law.  As set out in NSAL's opposition to the Lopezes' Letter Motion seeking a stay of this action (*see* ECF No. 19) the Lopezes are former officers and directors of NSAL – a Marshall Islands entity – and thus they are subject to personal jurisdiction in the Marshall Islands (which follows Delaware law). *See*, *e.g.*, *F5 Capital v. Pappas*, 856 F.3d 61, 71 fn. 8 (2d Cir. 2017) ("The Marshall Islands have adopted Delaware corporate law."). It is well-established that officer and directors are subject to personal jurisdiction in Delaware by implied consent for all claims relating to the business of the company.  *See*, *e.g.*, *Chow v. Canyon Bridge Cap. Partners, LLC*, 2024 U.S. Dist. LEXIS 129424 (D. Del. July 22, 2024).

Ultimately, the contention that the Marshall Islands court lacks jurisdiction over the Lopezes is not only demonstrably incorrect but also irrelevant to the issues presently before this Court because, under Section 1782, a litigant satisfies the statute's "for use" requirement when the discovery sought is to be used at some phase of a foreign proceeding even if the litigant has not yet commenced the foreign proceeding so long as it is "within reasonable contemplation." *Mees v. Buiter*, 793 F.3d 291,

[6]

295 (2d Cir. 2015). As the Second Circuit further explained, in *Gorsoan Ltd. & Gazprombank OJSC for an Order Pursuant to 28 U.S.C. 1782 to Conduct Discovery v. Bullock*, 652 Fed. Appx. 7, 9 (2d Cir. 2016), "[t]here is no 'requirement that evidence sought in the United States pursuant to § 1782(a) be discoverable under the laws of the foreign country that is the locus of the underlying proceeding.' A district court . . . may not refuse a request for discovery pursuant to § 1782 because a foreign tribunal has not yet had the opportunity to consider the discovery request."

### III.     THE COMMENCEMENT OF THIS ACTION EX PARTE WAS APPROPRIATE

Finally, the Lopezes' suggestion that the Ex Parte Order was improperly or prematurely granted in this case under Marshall Islands Rule of Civil Procedure 26(d)(1) (the equivalent of Fed. R. Civ. P. 26(d)(1)) is inconsistent with the law under Section 1782, is unsupported by citation to any authority, and is decidedly wrong. As noted in Section II, *supra*, under Section 1782's "for use" requirement is satisfied where the discovery sought is to be used at some phase of some foreign proceeding, whether that foreign proceeding is currently pending or reasonably forthcoming. *Mees*, 793 F.3d at 295. As also explained above, the Second Circuit in *Gorsoan Ltd.*, held that the discovery sought in the United States need not be discoverable under the laws of the foreign country. *Gorsoan Ltd.*, 652 Fed. App'x at 9. Moreover, Proposed Intervenors badly misstate the Marshall Islands procedural rules, which, by their own terms, apply only to litigation in the Marshall Islands itself, not this ancillary proceeding. Marshall Islands Rule of Civil Procedure 1 ("these rules shall govern procedure in *Republic of the Marshall Islands courts*") (emphasis added).

The Lopezes' complaint that they were "never served with copies of the Petition or otherwise given formal notice of the proceedings"[3] is also irrelevant. Ex Parte consideration of a Section 1782 application does not violate due process of interested parties because they can later challenge any

---

[3] Lopezes' Memo of Law at 7.

discovery by moving to quash. *See Gushlak v. Gushlak*, 486 Fed. Appx. 215, 217 (2d Cir. 2012). District courts may, and customarily do, resolve applications pursuant to Section 1782 through ex parte proceedings. *See, id.*; *In re Hornbeam Corp.*, 2015 U.S.Dist.LEXIS 142361 at * 11-12.

## IV.    THE LOPEZES ARE NOT ENTITLED TO A STAY

As with their Letter Motion (ECF No. 18), the Lopezes request a stay of the Ex Parte Discovery Order (ECF No. 12).  *See*, Lopezes' Memo of Law at 9-10.  Rather than repeat at length the arguments set forth in its opposition (ECF No. 19) to the Letter Motion (ECF No. 18), NSAL incorporates such arguments herein by reference.  The Lopezes are not entitled to a stay because they have failed to carry their burden of establishing entitlement to injunctive relief.  Having failed to establish a likelihood of success in establishing a basis for vacatur of the Ex Parte Discovery Order, or that they will suffer any harm, let alone irreparable harm, in the absence of a stay, the Lopezes' request for a stay should be denied.

## V.    THE LOPEZES HAVE FILED A MOTION TO DISMISS THE MARSHALL ISLANDS LAWSUIT AND SOUGHT A STAY OF THIS ACTION

After filing the subject motion to intervene (ECF No. 12), and the Letter Motion seeking a stay (ECF No. 13), the Lopezes appeared in the Marshall Islands lawsuit and filed a motion to dismiss for lack of jurisdiction.  The Lopezes also filed an "Emergency Motion to Confirm Stay of Discovery and For Temporary Restraining Order."  *See* Exhibit B annexed hereto.  As set forth in their motion papers in the Marshall Islands lawsuit, the Lopezes clam that they appeared in that action purportedly "only for the purpose of filing this emergency motion aimed at preserving the integrity of this Court's rules of procedures."  *Id.* at 1.  The relief the Lopezes seek from the Marshall Islands court is an order "confirming a stay of discovery, requiring [NSAL] to withdraw the untimely subpoenas sought in the New York State and Federal Courts, and restraining [NSAL] from seeking discovery in this or any other jurisdiction based on the pendency of this action."  Notably, despite having already sought

a stay of the subpoenas in this action, the Lopezes have failed to notify this Court of their having sought the same or similar relief in the Marshall Islands lawsuit.

The sole basis for the Lopezes motion for a stay and temporary restraining order in the Marshall Islands lawsuit is that NSAL is supposedly not entitled to seek discovery prior to having met and conferred under Marshall Islands Rule of Civil Procedure 26(d)(1) (which, as noted, appears substantially equivalent to Federal Rule of Civil Procedure 26).  However, the Lopezes fail to cite a single precedent granting a stay or temporary restraining order against a discovery action commenced pursuant to Section 1782.  This is hardly surprising given that, as set forth in Section II, *supra*, Section 1782's "for use" requirement is satisfied even when litigation has not been commenced in a foreign forum, so long as it is "within reasonable contemplation."  *Mees*, 793 F.3d at 291.

The Marshall Islands High Court has scheduled a conference for January 7, 2025 at 2:00 p.m. (UTC +12), or January 6, 2025 at 9:00 p.m. (EST) for purposes of scheduling a hearing on the Lopezes' Emergency Motion. *See* Exhibit C annexed hereto.

## **CONCLUSION**

For the foregoing reasons, NSAL does not oppose intervention.  However, the Lopezes have failed to establish any grounds for vacatur of the Ex Parte Discovery Order, have failed to show a likelihood of success on the merits of their intended motion to vacate, and have otherwise failed to show any harm, let alone irreparable harm, to justify a stay of the Ex Parte Discovery Order or the subpoenas issued thereunder.  Accordingly, the Lopezes' request for a stay should be denied.

[9]

Dated:  New York, NY
        January 6, 2025

                                    The Petitioner,

                                    NAVIOS SOUTH AMERICAN
                                    LOGISTICS INC.

                         By:_____
                                    Patrick F. Lennon, Esq.
                                    Kevin J. Lennon, Esq.
                                    Steven R. Winters, Esq.
                                    Elliott T. Williams, Esq.
                                    LENNON, MURPHY & PHILLIPS, LLC
                                    The GrayBar Building
                                    420 Lexington Ave., Suite 300
                                    New York, NY 10170
                                    Tel: (212) 490-6050
                                    Fax: (212) 490-6070
                                    pfl@lmplaw.net
                                    kjl@lmplaw.net
                                    srw@lmplaw.net
                                    elliott.williams@lmplaw.net

## **CERTIFICATION OF SERVICE**

I certify that on January 6, 2025 I electronically filed the foregoing document and that it is available for viewing and downloading from the Court's CM/ECF system, and that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF System.

_____
Patrick F. Lennon