UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X   Case No.: 24-MC-575 (LJL)

IN RE EX PARTE APPLICATION OF NAVIOS
SOUTH AMERICAN LOGISTICS INC.

**DECLARATION OF
DR. MARIELA RUANOVA
IN SUPPORT OF MOTION TO
QUASH SUBPOENAS**

---------------------------------------------------------------------X

**DR. MARIELA RUANOVA**, an attorney duly licensed to practice law in the Republic of Uruguay, and not a party to the above-entitled action, affirms the following to be true under the penalties of perjury pursuant to pursuant to 28 U.S.C. § 1746.

1. I am counsel of record to Peers Business Inc. ("Peers"), the minority shareholder of Petitioner Navios South American Logistics Inc. ("NSAL" or "Petitioner"), and its beneficial owners, the Lopez Family members (the "Minority Shareholder"), in a prior, related action filed on October 1, 2024, in Montevideo, Uruguay, by Peers and Intervenor herein, Claudio Lopez, captioned "<u>Peers Business Inc. And Claudio Pablo Lopez V/ Navios South American Logistics And Others- Preliminary Measures</u>" Case No.: 2-94518/2024 (hereinafter the "Uruguayan Action"), against Petitioner herein. A Certified English translation of the Uruguayan Court Discovery Order reciting these claims, followed by the Spanish language original, is annexed hereto as Exhibit 1.

2. As such, I have personal knowledge of the facts herein unless otherwise indicated. I submit this Declaration in support of Intervenors Claudio Lopez and Carlos Lopez (hereinafter jointly "Intervenors"), Motion to Vacate the Discovery Order and To Quash Subpoenas issued in this action.

1

**I.     The Uruguayan Action.**

3.      On September 25, 2024, I formally notified Petitioner by Notarial Minute of Peers and the Lopezes' claims against Petitioner and demanded the production of books and records in support of the anticipated filing of the complaint, as required by Uruguayan procedural law. A copy of the Notarial Minute is annexed hereto as Exhibit 2.

4.      On October 1, 2024, the Uruguayan Action was commenced by Peers, Intervenor's 36.2% Minority Shareholder, and Claudio Lopez to demand the production of documents in support a claim for damages arising from breach of fiduciary duties, fraudulent conduct, self-dealing, and corporate waste by Petitioner's Board of Directors and its Chairwoman and 63.8% majority shareholder (the "Majority Shareholder"), Angeliki Frangou ("Frangou"), who intended to dilute and/or appropriate the Lopez family's minority shares.  *See* Exhibit 1.

5.      Specifically alleged in the Uruguayan Action, Majority Shareholder Frangou, intended to dilute and/or appropriate the Lopez family's minority shares valued at $300 million, by approving a conflicted $190 million loan to NSAL by Frangou, convertible to shares in five years at a fictitious pre-conversion equity value of $330 million, effectively diluting the Minority Shareholder's shares to approximately one-third of their actual value.  *See* Exhibit 3 (Terms of $190 million Loan, presentation to Board of Directors, at p. 11; *see also* p. 4, showing $160 million net loan to NSAL after payment of $30 million origination fee payment).

6.      Frangou's valuation of the company is just one-third of its actual value. Two independent written valuations conducted by KPMG and Deloitte in 2023, valued NSAL at $800 million and $866 million, respectively.  *See* Valuations at Exhibits 4 and 5, respectively. The Lopezes' minority shares are thus worth approximately $300 million, and by the Majority Shareholders' own valuation, at least $119 million.

7. On December 3, 2024, Petitioner was served with the Uruguayan Action Petition and an Order of the Uruguayan Court. *See* Exhibit 1. However, Petitioner was well aware of Intervenors' claims during the summer of 2024, and was formally put on notice of the claims and demand for production of documents regarding the conflicted Loan on September 25, 2024, via Notarial Minute. *See* Exhibit 2. Petitioner appeared in the Uruguayan Action and filed an appeal of the Uruguayan Court Discovery Order on December 11, 2024, which is currently pending briefing and decision.

## II.     Petitioners' Claims Arise from the Lopezes' Employment Agreements.

8. Intervenor Claudio Lopez was employed by Petitioner as Chief Executive Officer and Vice-Chairman of the Board from 2008 to August 2024, pursuant to a written employment agreement. A copy of Claudio Lopez' Employment Agreement is annexed hereto as Exhibit 6. A copy of Carlos Lopez' Employment Agreement is annexed hereto as Exhibit 7. The Employment Agreements are governed by Uruguayan law. *See* Exhibits 6 and 7, ¶12 and ¶5.2.

9. Carlos Lopez resigned from his employment with Petitioner in 2022. Claudio Lopez was terminated by Petitioner, without cause, on August 13, 2024 (*see* the Termination Letter, annexed hereto as Exhibit 8), after objecting in writing on August 7, 2024, through his New York counsel, Freshfields, to Petitioner's Board's approval of several conflicted transactions. *See* Exhibit 9 (Freshfields' August 7, 2024, letter objecting to conflicted Loan).

10. Petitioner's Marshall Islands Complaint asserts claims against Claudio Lopez and Carlos Lopez arising, for the most part, from their employment with NSAL pursuant to the written Employment Agreements. *See* RMI Complaint ¶ 23 ("Defendants were appointed to serve as Directors on NSAL's Board in January 2008 Defendants were also made executive officers of NSAL, with Defendant Claudio Lopez serving as NSAL's Chief Executive Officer

and Defendant Carlos Lopez serving as NSAL's Chief Commercial Officer, (Shipping Division)"); ¶ 24 ("As Directors and Officers of NSAL, Defendants owed NSAL fiduciary duties", which they allegedly breached).  Intervenors' Employment Agreements were performed entirely in South America and are governed by Uruguay law.  The RMI court lacks jurisdiction to adjudicate claims which arise from alleged actions by Intervenors in South America, in the course of their employment with Petitioner.

### III.     Petitioner's Claims were Brought in Retaliation for Intervenors' Claims.

11.   I am of the firm opinion that Petitioner's allegations in the RMI Complaint were brought in retaliation for Intervenors' and Minority Shareholders' claims.  The first time I became aware of Petitioner's alleged "investigation" alleging wrongdoing against Intervenors was in Israel David's September 29, 2024, letter, sent just days after I served Petitioner with the September 25, 2024, Notarial Minute as a predicate to filing the Uruguayan Action.  *See* Notarial Minute at Exhibit 2.  A copy of David's September 29, 2024, letter is annexed hereto as Exhibit 10.

12.   The Petitioners' state court Orders of Attachment on Intervenors' assets, and federal court discovery subpoenas, which seek information about Intervenors' finances, appear aimed at intimidating and coercing the Minority Shareholders not to pursue their claims in the Uruguayan Action.

13.   In its November 4, 2024, letter Petitioner additionally resorted to self-help by putting Intervenors on notice that:

> "...to ensure assets are not dissipated so as to render ineffectual any eventual judgment ultimately awarded to [Petitioner], [Petitioner] will not permit the sale or transfer of any of [Petitioner'] shares held by Peers until this matter is fully resolved."

*See* Exhibit 11 (Israel David November 4, 2024, letter to Peers and the Lopezes New

4

York counsel, page 3).

.

    Dated:  Montevideo, Uruguay
    January 13, 2025

                              Respectfully Submitted,

                              <u>/s/ Mariela Ruanova</u>
                              MARIELA RUANOVA