# EXHIBIT 9



**By email**

**New York**
3 World Trade Center
175 Greenwich Street
New York, NY 10007

**Thomas Walsh**
T +1 (212) 277-4000
T +1 (646) 668-5122 (direct)
E thomas.walsh@freshfields.com

freshfields.us

Board of Directors
Navios South American Logistics Inc.
Paraguay 2141, Of. 1603 (11800)
Montevideo, Uruguay

Israel David
Israel David LLC
17 State Street, Suite 4010
New York, NY 10004

August 7, 2024

Dear Mr. David,

    I write on behalf of Claudio P. Lopez in response to your letter dated July 31, 2024, sent on behalf of the Members of the Board of Directors of Navios South American Logistics ("NSAL"). I note that this letter has ignored without explanation Mr. Lopez's demand to review the books and records of the Company. As a Director of NSAL, the Marshall Islands Business Corporations Act guarantees Mr. Lopez an "absolute right" to inspect records of "every kind" belonging to NSAL and its subsidiaries.[1] We must therefore strongly reiterate Mr. Lopez's demand that the Board produce the documents outlined below.

    ***Nature and Structure of the Subordinated Loan.*** It is not in dispute that NSAL must obtain a further $478.5 million to meet its outstanding obligations before its Senior Notes reach maturity in July 2025. Rather, Mr. Lopez's concern relates to the Subordinated Loan Facility ("Subordinated Loan") for $190 million, concluded for the purpose of meeting that debt obligation. The Subordinated Loan appears to be a conflicted transaction concluded on terms that are not in the best interests of the Company or its minority shareholder, and reached without a transparent, arms-length negotiation.

    The materials shared by the Board of Directors prior to the Special Meeting on July 29, 2024 note that the Subordinated Loan has been executed and approved by the Conflicts Committee.[2] Those materials also summarize some of the terms of the Subordinated Loan, several of which raise serious concerns. First, the loan includes US$29.8 million in fees and OID, roughly 18.75% of its total value. In contrast, the bank loans negotiated to meet the rest of NSAL's outstanding debt obligation have fees of

---

[1] Marshall Islands Business Corporations Act, Title 52 § 82.

[2] Navios South American Logistics, Inc., "Secured Loan Facilities & Redemption of Senior Secured Notes Due 2025" (July 25, 2024), at 11.



Freshfields Bruckhaus Deringer is an international legal practice operating through Freshfields Bruckhaus Deringer US LLP, Freshfields Bruckhaus Deringer LLP, Freshfields Bruckhaus Deringer (a partnership registered in Hong Kong), Freshfields Bruckhaus Deringer Law office, Freshfields Bruckhaus Deringer Foreign Law Office, Studio Legale associato a Freshfields Bruckhaus Deringer, Freshfields Bruckhaus Deringer Rechtsanwälte Steuerberater PartG mbB, Freshfields Bruckhaus Deringer Rechtsanwälte PartG mbB and other associated entities and undertakings. For further regulatory information please refer to www.freshfields.com/support/legal-notice.

just a few percent.[3] Second, the Subordinated Loan does not allow for amortization, unlike the bank loans, which do permit amortization.[4] Third, the loan is convertible to equity after a period of five years, based on a pre-conversion equity value of $330 million. This option creates a windfall for the provider of the loan and also a substantial, immediate loss to the value of Peers' stake in NSAL.

The full terms of the Subordinated Loan, as well as the identity of its provider, have still not been disclosed to the Board, and no explanation for these omissions has been offered. We therefore demand that the Board disclose the identity of the loan provider, the full terms and conditions of the Subordinated Loan, the alternatives considered, and any opinions provided regarding the justification and need for the refinancing and any associated risks, including by the Conflicts Committee and its legal and financial advisors.

***Independence of the Members of the NSAL Conflicts Committee.*** Approval of the Subordinated Loan by the Conflicts Committee does not establish that this was a permissible transaction, as there has been no evidence that the Conflicts Committee is independent. Your letter notes that Mr. Lopez did not object to the initial appointment of Mr. Ren Wada and Mr. Christos Kokkinis to the Conflicts Committee in March 2023. That is irrelevant. These candidates represented themselves as independent. Chairwoman Frangou made comments to the Board describing the candidates, and represented them as independent. Mr. Lopez has since learned that Mr. Wada has an ongoing commercial relationship with Navios Maritime Partners,[5] and that Mr. Kokkinis has served on the Board of other companies controlled by Ms. Frangou for several years.

Nor is this issue resolved because counsel for the Conflicts Committee determined that its members were independent. Those legal advisors were acting at the Committee's direction, and the Board has provided no details as to what information they considered, any recommendations they gave, and whether those recommendations were implemented. Further, even if the appointment of Messers. Wada and Kokkinis is consistent with the Conflicts Committee Charter and Rule 10A-3 of the Securities and Exchange Commission, this would not be sufficient to meet the applicable judicial standard for reviewing conflicted transactions, which involves more exacting requirements for director independence.

We therefore demand again that the Board fully disclose any past and present financial and professional relationships between the members of the Conflicts Committee and NSAL, its controlling shareholder, or their affiliated companies. We also request any documents relevant to outside counsel's evaluation of the Conflicts Committee's independence, including the factual information that counsel was provided and/or considered in relation to their evaluation.

***Mistake in the Minutes of the Board of Directors' Meeting.*** During the Board of Directors Special Meeting on May 9, 2024, Mr. Lopez requested that the potential terms for the Subordinated Loan be returned to the Board following review by the Conflicts Committee, and Ms. Frangou agreed. This exchange was not accurately reflected in the minutes of the meeting. The fact that the other members of

---

[3] *Id.* at 5, 6, 11.

[4] *Id.* at 7.

[5] *See, e.g.*, Navios Maritime Partners L.P., Form 6-K (August 31, 2023), at 22.



the Board subsequently ratified these minutes does not establish their accuracy, given that there is no proof of independence of any of those members.

   ***Attendance at the Special Board Meeting on July 29, 2024.*** Notice for this meeting was provided on the morning of Sunday, July 28, 2024 for an early morning meeting the following day. There has been no justification provided for the use of this highly unusual process for discussion of financial matters critical to the Company's long-term financial performance and management. We demand that the Board certify that other Board members were not given other forms of notice of this meeting to ensure their attendance.

   We understand that the Board plans to finalize the refinancing of the NSAL Senior Notes imminently and authorized any officer or attorney of the Company to take such action at the July 29, 2024 meeting of the Board. We must therefore demand that the Board (1) provide by August 9, 2024 the requested information regarding the Subordinated Loan and independence of Mr. Kokkinis and Mr. Wada; (2) make the requested affirmation regarding the organization of the Board Meeting on July 29, 2024; and (3) desist from authorizing the refinancing of the NSAL Senior Notes until my serious concerns regarding the Subordinated Loan have been resolved.

   The conduct of the Board, including its reaction to my concerns on these matters, is deeply concerning and Mr. Lopez is evaluating his legal rights. We look forward to your response and to promptly receiving the above-described documents.

Sincerely,

Thomas Walsh

cc:     Claudio Pablo Lopez
        Vice Chairman and Director
        Navios South American Logistics Inc.

