UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X
IN RE EX PARTE APPLICATION OF　　　:　　　24 MC 575 (LJL)
NAVIOS SOUTH AMERICAN　　　　　　　:
LOGISTICS INC.　　　　　　　　　　　　:
-----------------------------------------------------X

**MEMORANDUM OF LAW IN OPPOSITION TO INTERVENORS' MOTION
TO VACATE 28 U.S.C. § 1782 DISCOVERY ORDER AND TO QUASH SUBPOENAS**

LENNON, MURPHY & PHILLIPS, LLC
Patrick F. Lennon, Esq.
Kevin J. Lennon, Esq.
Elliott T. Williams, Esq.
The Graybar Building
420 Lexington Avenue – Suite 300
New York, NY 10170
(T) (212) 490-6050
(F) (212) 490-6070
plennon@lmplaw.net
klennon@lmplaw.net
elliott.williams@lmplaw.net

*Attorneys for Petitioner*
*NAVIOS SOUTH AMERICAN LOGISTICS INC.*

## <u>TABLE OF CONTENTS</u>

RESPONSE TO PRELIMINARY STATEMENT …………………………….. 1

RESPONSE TO BACKGROUND ……………………………………………. 10

LEGAL STANDARD ……………………………………………………. 12

ARGUMENT ……………………………………………………………….. 15

    A.    INTERVENORS HAVE FAILED TO SHOW CLEAR
        ERROR OR THAT THE COURT'S DISCOVERY ORDER
        CONSTITUTES MANIFEST INJUSTICE ……………………………… 15

    B.    THE COURT CORRECTLY DETERMINED THAT
        PETITIONER SATISFIED THE DISCRETIONARY
        FACTORS APPLIED IN SECTION 1782 CASES …………………….. 15

    C.    INTERVENORS CANNOT DEMONSTRATE ANY
        UNDUE BURDEN ……………………………………………………. 18

CONCLUSION …………………………………………………………… 22

# TABLE OF AUTHORITIES

## Cases

*Brandi–Dohrn v. IKB Deutsche Industriebank AG*,
  673 F.3d 82 (2d Cir. 2012) …………………………………………….. 2, 14, 17

*Certain Funds, Accounts and/or Investment Vehicles v. KPMG, L.L.P.*,
  798 F.3d 113 (2d Cir. 2015) ……………………………………………. 9

*Deposit Ins. Agency v. Leontiev*,  No. 17 Misc. 414 (GBD) (SN),
  2018 U.S. Dist. LEXIS 122705, 2018 WL 3536083 (S.D.N.Y. July 23, 2018) .. 14

*Euromepa S.A. v. R. Esmerian, Inc.*,
  51 F.3d 1095 (2d Cir. 1995) ………………………………………… 2, 14

*Fed. Republic of Nigeria v. VR Advisory Servs., Ltd.*,
  27 F.4th 136 (2d Cir. 2022) ………………………………………… 16

*Gorsoan v. Bullock*,
  652 Fed. Appx. 7 (2d Cir. 2016) ………………………………………… 7

*Hedgeye Risk Mgmt. v. Dale*, No. 21-CV-3687 (ALC) (RWL),
  2023 U.S. Dist. LEXIS 116323, 2023 WL 435076 (S.D.N.Y. July 5, 2023) ….. 20

*In re Application for an Ord. Permitting Metallgesellschaft AG to take Discovery*,
  121 F.3d 77 (2d Cir. 1997) ……………………………………………….. 7, 15, 16

*In re Application of Malev Hungarian Airlines*,
  964 F.2d 97 (2d Cir. 1992) ……………………………………………….. 8

*In re Application of Republic of Ecuador*, No. 11mc73-RH/WCS,
  2011 U.S. Dist. LEXIS 154031, 2011 WL 10618727 (N.D. Fla. Aug. 24, 2011) .. 7

*In re Application of Shervin Pishevar*,
  439 F. Supp. 3d 290 (S.D.N.Y. 2020) ………………………………………. 13

*In re Application of Wilson & Partners, Ltd.*, No. 06-cv-02575-MSK-PAC (MEH),
  2007 U.S. Dist. LEXIS 54624, 2007 WL 2221438 (D. Colo. July 27, 2007) … 7

*In re Arida, LLC*, No. 19-MC-522,
  2020 U.S. Dist. LEXIS 239397, 2020 WL 7496355 (S.D.N.Y. Dec. 21, 2020) .. 9

*In re Auto-Guadeloupe Investissement*, No. 12-mc-221 (RPP),
  2012 U.S. Dist. LEXIS 147379,  2012 WL 4841945 (S.D.N.Y. Oct. 10, 2012) … 18

ii

*In re Biovail Corp. Secs. Litig.*,
    247 F.R.D. 72 (S.D.N.Y. 2007) ……………………………………………… 19

*In re Edelman*,
    295 F.3d 171 (2d Cir. 2002) ………………………………………………… 14

*In re Ex Parte Application of Kleimar N.V.*,
    220 F. Supp. 3d 517 (S.D.N.Y. 2016) ……………………………………. 20

*In re Fitch, Inc.*,
    330 F.3d 104 (2d Cir. 2003) ………………………………………………. 18

*In re IKB Deutsche Industriebank AG*, No. 09-cv-7852,
    2010 U.S. Dist. LEXIS 35924, 2010 WL 1526070 (N.D. Ill. Apr. 8, 2010) ….. 7

*In re JSC BTA Bank*,
    577 F. Supp. 3d 262 (S.D.N.Y. 2021) ……………………………………… 21

*In re Letters Rogatory Issued by Dir. of Inspection of Gov't of India*,
    385 F.2d 1017 (2d Cir. 1967) ……………………………………………….. 9

*In re Imanagement Servs. Ltd.*, No. Misc. 05-89,
    2005 U.S. Dist. LEXIS 17025, 2005 WL 1959702 (S.D.N.Y. Aug. 16, 2005) … 8

*In re Peruvian Sporting Goods S.A.C.*, No. 18-mc-91220,
    2018 U.S. Dist. LEXIS 223564, 2018 WL 7047645 (D. Mass. Dec. 7, 2018) … 7

*In re Request for Int'l Judicial Assistance*,
    687 F. Supp. 880 (S.D.N.Y. 1988) ………………………………………….. 9

*In re Request for Assistance from Ministry of Legal Affairs of Trinidad & Tobago*,
    848 F.2d 1151 (11th Cir. 1988) …………………………………………… 18

*In re Travessia Securitizadora de Creditos Financeiros X S.A*,
    712 F. Supp. 3d 707 (D.S.C. Jan 19, 2024) ……………………………… 2

*In re Veiga*,
    746 F. Supp. 2d 8 (D.D.C. 2010) …………………………………………… 7

*In re WinNet R CJSC*, No. 6-MC-484 (DLC)
    2017 U.S. Dist. LEXIS 97164, 2017 WL 2728436 (S.D.N.Y. June 23, 2017) … 15

*Insured Advocacy Group, LLC v. Spartan Services Corp.*,  No. 23-cv-07212 (LJL),
    2024 U.S. Dist. LEXIS 216028, 2024 WL 48935380 (S.D.N.Y. Nov. 26, 2024) .. 19

*Intel Corp. v. Advanced Micro Devices, Inc*.,
    542 U.S. 241 (2004) ……………………………………………………… *passim*

*Kuwait Inv. Auth. v. Sarrio S.A.,*
    119 F.3d 143 (2d Cir. 1997) …………………………………………… 9

*Mandell v. The Maxon Co., Inc.,* No. 06 Civ. 460 (RWS),
    2007 U.S. Dist. LEXIS 99238, 2007 WL 3022552 (S.D.N.Y. Oct. 16, 2007) … 19

*Mees v. Buiter,*
    793 F.3d 291 (2d Cir. 2015) ………………………………………….. 13, 16, 17

*Minatec Fin. S.A.R.L. v. SI Group, Inc*., No. 08 Civ. 269,
    2008 U.S. Dist. LEXIS 63802, 2008 WL 3884374 (N.D.N.Y. Aug. 18, 2008) … 8

*Morelli v. Alters,* No. 19-cv-10707-GHW,
    2020 U.S. Dist. LEXIS 207362, 2020 WL 6508858 (S.D.N.Y. Nov. 5, 2020) … 19

*PKF Intern. Corp. v. IBJ Schroder Leasing Corp*., No. 96 Civ. 1816 (SAS)(HBP),
    1996 U.S. Dist. LEXIS 13505, 1996 WL 525862 (S.D.N.Y. Sept. 17, 1996) …. 21

*Schmitz v. Bernstein Liebhard & Lifshitz, LLP,*
    376 F.3d 79 (2d Cir. 2004) …………………………………………….. 13, 15

*Seattle Times Co. v. Rhinehart,*
    467 U.S. 20 (1984) …………………………………………………….. 8

*Ungar v. Palestinian Auth*.,
    400 F. Supp. 2d 541 (S.D.N.Y. 2005) …………………………………….. 9, 20

*United States v. Miller,*
    425 US 435 (1976) …………………………………………………….. 20

*United States v. Sanders*,
    211 F.3d 711 (2d Cir. 2000) ………………………………………….. 18

*Usov v. Lazar*,
    2014 U.S. Dist. LEXIS 122735, 2014 WL 4354691 (S.D.N.Y. Aug. 22, 2014) .. 19

*Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.,*
    956 F.2d 1245 (2d Cir. 1992) …………………………………………. 15

**Statutes**

28 U.S.C. § 1782 ……………………………………………………….. *passim*

**Rules**

Federal Rule of Civil Procedure 1  …………………………………………………………    6

Federal Rule of Civil Procedure 45  …………………………………………………..    *passim*

Marshall Islands Rules of Civil Procedure 1  …………………………………………    6

Marshall Islands Rules of Civil Procedure 26(a)(1)(1)(B)(viii)  ………………..    6

Marshall Islands Rules of Civil Procedure 26(d)(1)  ………………………………    6

## RESPONSE TO PRELIMINARY STATEMENT

Petitioner, NAVIOS SOUTH AMERICAN LOGISTICS INC. ("Petitioner" or "NSAL") hereby submits the within Memorandum of Law opposition to the Motion to Quash[1] (ECF Nos. 27 - 31) ("Motion") filed by Intervenors Claudio Pablo Lopez and Carlos Augusto Lopez ("Intervenors" or "Lopezes").  The Motion should be denied as the Intervenors have failed to carry their burden to establish that the Court erred in granting the Petitioner's application for discovery assistance pursuant to 28 U.S.C. § 1782 and issuing its *ex parte* Order dated December 19, 2024 (ECF No. 12) (the "Discovery Order").  The Intervenors also fail to establish that the subpoenas issued to the non-parties seeking production of financial records connected to the funds that the Intervenors are credibly alleged to have looted from the Petitioner over the course of a decade, run afoul of Federal Rule of Civil Procedure 45 ("Rule 45").

It is indisputable that the Petitioner's lawsuit is pending against the Intervenors in the Republic of the Marshall Islands ("RMI Action") and the Intervenors cannot credibly claim otherwise.  The law is clear that it is not this Court's role to resolve motions and claimed procedural issues which have been filed in the RMI Action.  This is because 28 U.S.C. § 1782 is designed to provide interested parties with discovery assistance even when proceedings are only reasonably *contemplated*.  Thus, the fact that the RMI Action has been commenced, is sufficient to satisfy the statute.

Intervenors predicate their Motion on the notion that the RMI Action will "inevitably be dismissed due to the lack of personal jurisdiction over the Lopezes."  *See* Intervenors' Memorandum of Law in Support of Motion at 1 (ECF No. 31).  However, the Petitioner has opposed the Intervenors' motion to dismiss the RMI Action and because the outcome is dependent

---

[1] While styled as a "Motion to Quash" the relief sought is to both vacate the Order entered by this Court to allow discovery pursuant to 28 U.S.C. § 1782 and to quash the subpoenas issued pursuant to such Order.

on the RMI court's determination, the subject Motion in this action is premature and should be denied on such grounds. *See, In re Travessia Securitizadora de Creditos Financeiros X S.A*, 712 F. Supp. 3d 707, 717 (D.S.C. Jan 19, 2024)(court denied motion to vacate notwithstanding contention that motion to dismiss was pending and ruling expected within 60 days). In considering a 28 U.S.C. § 1782 application, courts do not interpret or analyze foreign law as it "can be fraught with danger." *See, Brandi–Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 82 (2d Cir. 2012); *Intel Corp. v. Advanced Micro Devices, Inc*., 542 U.S. 241, 263 (2004). Instead, courts reject "speculative forays into legal territories unfamiliar to federal judges," because "[s]uch a costly, time-consuming, and inherently unreliable method of deciding section 1782 requests cannot possibly promote the 'twin aims' of the statute." *See, Euromepa S.A. v. R. Esmerian, Inc*., 51 F.3d 1095, 1099-1100 (2d Cir. 1995). Because they cannot credibly deny that the discovery sought by the Petitioner seeks is directly relevant to the claims in the RMI Action, the Intervenors' claim instead that the RMI Action will be dismissed, or is procedurally flawed, in a desperate effort to convince this Court that Petitioner should be denied discovery assistance. In reality, Intervenors are simply speculating what the RMI court will do. Moreover, even if the RMI Action is dismissed for lack of personal jurisdiction, Petitioner will pursue its fraud claims against the Intervenors in another jurisdiction, perhaps Uruguay or elsewhere in South America. Thus, the Petitioner's need for discovery assistance will remain.

In their Motion the Intervenors offer up a nonsensical argument that Petitioners commenced the RMI Action as a "retaliatory measure" in response to the Intervenors' purported claims of breach of fiduciary duty, fraud or corporate theft which to date have not been asserted. In support they rely on a pre-suit books-and-records action filed in Uruguay seeking to obtain discovery for matters wholly unrelated to the Petitioner's claims in the RMI Action. However,

2

just as the within action is not itself a recovery action, so too is the action filed, in Uruguay by Peers Business Inc ("Peers"), the company in which the Intervenor, and others, maintain an ownership interest.  Furthermore, the Intervenors misapprehend (and in so doing misrepresent to this Court) the nature of the purported claims of breach of fiduciary duty, fraud or corporate theft, which they claim they "intend to pursue." *See*, Declaration of Dr. Mariela Ruanova, Ex. 1, ECF Nos. 30, 30-1.  None of Intervenors purported, as yet unasserted claims, would be properly asserted against the Petitioner.  This is because the Uruguayan action commenced by Peers is based on its status as an NSAL shareholder.[2]  Intervenor Claudio Pablo Lopez merely serves as Peers' attorney in fact, and neither he, nor Intervenor Carlos Augusto Lopez, is an NSAL shareholder[3].  Intervenor Carlos Augusto Lopez is not a party to the Uruguayan action.  Any claims that Peers *might* have would not be against Petitioner, but rather against one or more of the Petitioner's directors involved in approving a subordinated loan which is claimed to have diluted Peers' NSAL shares, or against other NSAL shareholders.  Petitioner is only a party to the Uruguay proceeding because it is the custodian of records that Peers and/or its attorney in fact, Intervenor Claudio Pablo Lopez, *may* use in furtherance of intended, but not yet asserted, claims against NSAL's board of directors, most notably, Ms. Angeliki Frangou.  Peers' intended claims also appear to be derivative claims that it could bring on NSAL's behalf against the individual directors, or other NSAL shareholders, but not against NSAL itself.

To be clear, to date, Intervenors have not asserted any substantive recovery claims against any party – including the Petitioner.  Indeed, Peers and Intervenor Claudio Pablo Lopez have merely obtained an *ex parte* discovery order (*see* Uruguayan Court Order (ECF No. 30-1)) from

---

[2] Peers shares are 100% owned by Sinimalec S.A.. which, in turn, is beneficially owned by various trusts whose beneficiaries we understand to be various Lopez family members, including the Intervenors.

[3] *See* Declaration of Patrick F. Lennon at ¶8, Exhibit 3 (Intervenor Claudio Pablo Lopez admitting he is not an NSAL shareholder).

the Uruguayan court akin to the relief which has been obtained by NSAL herein. The Intervenors neglected to include with their Motion a copy of the papers Peers and Intervenor Claudio Pablo Lopez filed in the Uruguayan action and instead presented only the *ex parte* Uruguayan court order and a notice of demand that was sent to NSAL. *See*, ECF Nos. 30-1 and 30-2. Thus, it is unknown what was actually alleged to the Uruguayan court and this Court should give no weight to the Intervenors' characterization of the Uruguayan action where neither this Court, nor NSAL, have been afforded the opportunity to review and assess the papers filed in that action.

Intervenors' inclusion of the Lopezes' employment agreements (*see* ECF Nos. 30-10 and 30-11) as part of the Motion in support of the contention that Uruguayan law somehow controls Petitioner's pending claims should be ignored. This is particularly so where neither of the wholly irrelevant declarations filed by the Lopezes in the RMI action in support of their Motion to Dismiss NSAL's Complaint (*see*, ECF Nos. 28-2 and 28-3) explain how the employment agreements have any bearing on the questions presented herein, *i.e.*, whether the Discovery Order was erroneously issued or the subpoenas violate Rule 45. As such, the Intervenors' employment agreements and their declarations are irrelevant to the subject Motion.

However, even if, as the Lopezes claim in their declarations (*see*, ECF Nos. 28-2, ¶ 19 and 28-3, ¶19), any claims related to their employment with NSAL are to be litigated in Uruguay, then such declarations provide a basis for this Court to conclude that the Discovery Order was properly issued. Put simply, if the Lopezes are correct about Uruguay being a proper forum for the adjudication of the Petitioners' claims (none of which, it should be noted, sound in a breach of contract based upon the Lopezes' employment agreements), which is denied, there is no plausible reason to believe that the documents and information sought from the non-party Respondents that have been served with subpoenas authorized by the Discovery Order would not render assistance

to that foreign tribunal in accordance with the purposes of 28 U.S.C. § 1782.  In fact, a Uruguayan court would be receptive to such discovery as per the Declaration of NSAL's Uruguayan counsel Luis Lapique who advises this Court, *inter alia,* as follows:

> 9.    Based on my knowledge of Uruguayan law and Uruguayan court procedures, it is my opinion that a Uruguayan court would be receptive to any evidence NSAL may gather in this Action in relation to its Claims against the Intervenors,  as long as it does not violate the public order of Uruguay. There is no specific definition of what the public order of Uruguay is, but basically it is the set of principles, laws that protect the general interests of society. For example, things related with slavery, drugs, etc. would be against the public order. In a private dispute, as is the case, I do not foresee a violation of the public order, since it seems no general principles would be affected.

> 10.    Based on my knowledge of Uruguayan law and Uruguayan court procedures, it is my opinion that NSAL would not be circumventing or offending any proof-gathering or discovery restrictions under Uruguayan law and procedure, nor would such discovery violate any policies of Uruguay.

*See*, Declaration of Luis Lapique, ¶¶ 9-10.

There is precisely nothing substantiating the Lopezes' self-serving assertion that the Petitioner's RMI Action, which is founded upon a thorough and ongoing investigation into the Lopezes' misdeeds, which are alleged in significant detail in the RMI Complaint (*see*, ECF No. 3, Exhibit 1), is a "sham" as the Intervenors disingenuously suggest.  Quite to the contrary, the Lopezes' ongoing failure to address any of the damning allegations levelled against them underscores that the Petitioners' allegations are meritorious and far from a sham.

Intervenors also argue that the discovery Petitioner seeks is premature and in violation of RMI procedure.  However, such contention is presently before the RMI court on Intervenors' motion for a temporary restraining order.  The RMI procedural rule cited by the Intervenors was addressed by NSAL in its Memorandum in Opposition to the Intervenors' motion for a temporary restraining order. *See* Declaration of NSAL's RMI counsel Mark Cianci, Exhibit 1.  The relevant portion of Petitioner's opposition to the motion for a temporary restraining order, set out below,

cogently explains why the RMI procedural rule does not prohibit the relief available under 28 U.S.C. § 1782.

ii. The Discovery in the Federal Discovery Action Is Wholly Proper

There is nothing improper about the discovery sought by NSAL in the Federal Discovery Action and authorized by the Southern District pursuant to 28 U.S.C. 1782(a). TRO Motion at 1- 2, 6-7. For at least five fundamental reasons, MIRCP 26(d)(1) – the only authority Defendants claim prohibits such discovery – does no such thing, and the discovery in the Federal Discovery Action is wholly consistent with law.

*First*, MIRCP 26(d)(1) does not apply to the Federal Discovery Action, which is in the Southern District. As MIRCP 1 explicitly provides, the Marshall Islands Rules of Civil Procedure "shall govern procedure in *Republic of the Marshall Islands courts*." (Emphasis added.)

*Second*, even if the Southern District were a Marshall Islands court, MIRCP 26(d)(1) does not apply because the Federal Discovery Action is, as Defendants acknowledge, a proceeding ancillary to this action.[4] MIRCP 26(d)(1), by its own terms, does not apply to any "proceeding exempted from initial disclosure under Rule 26(a)(1)(B)." And MIRCP 26(a)(1)(B)(viii), in turn, specifies that any "proceeding ancillary to a proceeding in another court" is "exempt from initial disclosure." Thus, because the Federal Discovery Action is an ancillary proceeding and would be exempt from initial disclosure even if it were in the Marshall Islands, the discovery timing provisions under MIRCP 26(d)(1) are inapplicable.

*Third* and similarly, the procedural rules that govern the Federal Discovery Action are the U.S. Federal Rules of Civil Procedure ("FRCP"). See FRCP 1. Identically to MIRCP 26(d)(1), FRCP 26(d)(1) generally prohibits discovery prior to a Rule 26(f) conference, but exempts from this restriction any "proceeding exempted from initial disclosure under Rule 26(a)(1)(B)," including any "proceeding ancillary to a proceeding in another court." Thus, the FRCP and the MIRCP are consistent in permitting discovery in the Federal Discovery Action now, prior to any Rule 26(f) conference – the exact opposite of Defendants' erroneous contention.

*Fourth*, controlling caselaw regarding 28 U.S.C. 1782(a), including from the U.S. Supreme Court, refutes Defendants' argument that the discovery in the Federal Discovery Action is somehow premature. As demonstrated above, the discovery in the Federal Discovery Action would be proper now even if Marshall Islands rules applied. And, in any event, the U.S. Supreme Court has concluded that "§ 1782(a) does not impose" "a foreign-discoverability requirement." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 253 (2004). In other words, even if (contrary to fact) the discovery sought and attained before the Southern District would never be proper to obtain in the Marshall Islands,

---

[4] *E.g.*, TRO Motion at 2, 6-7 ("Plaintiff is explicitly using the filing of the present suit to seek ex parte discovery in New York."; "Plaintiff has used the pendency of this case to seek discovery").

proceeding with such discovery in the Federal Discovery Action would still be completely appropriate. See *Gorsoan v. Bullock*, 652 Fed. Appx. 7, 9 (2d Cir. 2016) ("There is no requirement that evidence sought in the United States pursuant to § 1782(a) be discoverable under the laws of the foreign country that is the locus of the underlying proceeding."); *In re Application for an Ord. Permitting Metallgesellschaft AG to take Discovery*, 121 F.3d 77, 79 (2d Cir. 1997) ("We have rejected any requirement that evidence sought in the United States pursuant to § 1782(a) be discoverable under the laws of the foreign country . . . .").

***Finally***, the fact that the instant Marshall Islands action is still in its early stages is no basis to delay or deny discovery in the Federal Discovery Action pursuant to § 1782. To the contrary, "Section 1782 allows for discovery even when a foreign litigation is in a nascent stage. The United States Supreme Court in Intel rejected the contention that 1782 discovery should be unavailable because an applicant's foreign action had not progressed . . . ." *In re IKB Deutsche Industriebank AG*, 2010 WL 1526070, at *3 (N.D. Ill. Apr. 8, 2010); see *In re Application of Republic of Ecuador*, 2011 WL 10618727, at *4 (N.D. Fla. Aug. 24, 2011) ("There is no need to await discovery activity that might occur before the foreign tribunal . . . ."); *In re Application of Wilson & Partners, Ltd.*, 2007 WL 2221438, at *3 (D. Colo. July 27, 2007) ("that the foreign proceedings are in their infancy and have not yet reached the discovery stage . . . is irrelevant"). So too for the fact that Defendants' challenge to jurisdiction is currently unresolved, because a "district court need not await a foreign tribunal's determination that it has jurisdiction before granting an application for a Section 1782 subpoena." *In re Peruvian Sporting Goods S.A.C.*, 2018 WL 7047645, at *5 (D. Mass. Dec. 7, 2018); see *Republic of Ecuador*, 2011 WL 10618727, at *4 (same); *In re Veiga*, 746 F. Supp. 2d 8, 23 (D.D.C. 2010) ("The notion that it would somehow be premature for this Court to allow the requested discovery until the [foreign tribunal] has determined it has jurisdiction to hear the matter runs contrary to clear and unequivocal case law . . . .").

*See* Declaration of Mark Cianci, ¶¶ 7-9, Exhibit 1, pp. 12-13.

Similar to their argument that the RMI Action is a "sham" the Intervenors next claim that that the subpoenas served in New York are "overbroad and unduly burdensome." *See*, Memorandum of Law in Support of Motion at 8, ECF No. 31. Yet, review of the subpoenas, which were appended to the Petitioner's application (ECF No. 1-1) and thus were already previously reviewed by this Court, reflect they are well stated and seek discovery of documents and information tracing the funds which were looted from NSAL. The financial fraud committed by the Lopezes mandates that NSAL "follow the money."

7

Moreover, the Intervenors' purported privacy concerns are easily and regularly addressed by way of a protective order[5] which may be 'So Ordered' by the court. To this end, and as is set forth in the Declaration of Patrick F. Lennon ("Lennon Decl."), on January 14, 2025 Petitioner's counsel sent Intervenors' counsel an email advising as follows "NSAL is prepared to enter into Judge Liman's attached model protective order without modification, and to abide by its terms in the 1782 action. Please advise if your clients agree." *See* Lennon Decl. at ¶ 3, Exhibit 1. The following day, Intervenor's counsel replied "We will keep this on hand if and when discovery commences. We believe we will prevail in quashing the subpoenas, so this may well be either moot or premature, but we agree that his form is what we will use (perhaps with a couple proposed changes)." *Id.* at ¶4, Exhibit 2. Thus, the parties are in apparent agreement that a protective order will serve to assuage the Intervenors' claimed privacy concerns. *Id.* at ¶ 5.

Nevertheless, in its most recent submission to the RMI court, the Intervenors appear relatively nonplussed about the supposed privacy concerns as they advised the RMI court "[g]iven the pending Motion to Dismiss before this Court and the stay in the Federal Court Action, entering into a protective order at this time is premature." *See* Intervenors' Submission In Response To January 14, 2025 Order at 9 attached hereto as Exhibit 1. Even though subpoena compliance is currently stayed, an agreed upon protective order should be submitted to the Court to be 'So Ordered' and thereby ensure confidentiality of the Intervenors' financial information and

---

[5] *See, Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984) (noting that "the trial court's order allowing discovery was extremely broad," raising the very "concerns that justifiably may prompt a court to issue a protective order"); *In re Application of Malev Hungarian Airlines*, 964 F.2d 97, 99 (2d Cir. 1992) (district court has authority under 28 U.S.C. § 1782 and Fed. R. Civ. P. 26 to impose reasonable limitations and conditions upon discovery); *In re Imamagement Servs. Ltd.*, No. Misc. 05-89, 2005 WL 1959702, at *6 (S.D.N.Y. Aug. 16, 2005) ("there may be confidentiality concerns that should be addressed before discovery [pursuant to 28 U.S.C. § 1782] is permitted"); *Minatec Fin. S.A.R.L. v. SI Group, Inc*., No. 08 Civ. 269, 2008 U.S. Dist. LEXIS 63802, at * 29, 2008 WL 3884374, at *8 (N.D.N.Y. Aug. 18, 2008) ("[T]he beauty of § 1782 is that it permits this Court to impose a protective order that would extinguish any concern that privileged, confidential, or proprietary information would be indecorously revealed.").

documents disclosed by the subpoena Respondents.  The Intervenors' asserted privacy concerns seem to be tactical rather than bona fide.

The Intervenors also seek to shore up their Motion by claiming there is an undue burden of compliance with the subpoenas.  However, unlike their standing to contest the Discovery Order itself (*see, Kuwait Inv. Auth. v. Sarrio S.A.*, 119 F.3d 143, 147-48 (2d Cir. 1997) citing *In re Letters Rogatory Issued by Dir. of Inspection of Gov't of India*, 385 F.2d 1017 (2d Cir. 1967) and *In re Request for Int'l Judicial Assistance*, 687 F. Supp. 880, 887 (S.D.N.Y. 1988); *accord, Ungar v. Palestinian Auth.*, 400 F. Supp. 2d 541, 554 (S.D.N.Y. 2005)) they have no standing to raise this issue since they are not the respondent of any subpoena and any undue burden may be raised only by the subpoena Respondents.

Finally, the Intervenors inexplicably argue that the RMI Action is somehow not a true "foreign proceeding." *See,* Memorandum of Law in Support of Motion at 10, ECF No. 31. Intervenors cite *Certain Funds, Accounts and/or Investment Vehicles v. KPMG, L.L.P.*, 798 F.3d 113 (2d Cir. 2015) in support of this position.  However, in *Certain Funds*, the reviewing court denied a 28 U.S.C. § 1782 discovery petition because the party seeking discovery was merely considering the commencement of a foreign action.  Here, as aforesaid, it is indisputable that Petitioner has already commenced the RMI Action against the Lopezes.  Courts have denied 1782 applications when the discovery sought is shown to be a proverbial "fishing expedition" for ostensible use in "nonexistent, purely hypothetical proceedings." *See, e.g., In re Arida, LLC*, No. 19-MC-522, 2020 U.S. Dist. LEXIS 239397, at *22, 2020 WL 7496355, at *7 (S.D.N.Y. Dec. 21, 2020).  However, the Petitioner's RMI Action is currently pending, not hypothetical, and thus Intervenors' argument is without foundation and should be rejected.

## RESPONSE TO BACKGROUND

Contrary to the Intervenors' Motion, this matter does <u>not</u> involve a shareholder dispute.  It is a patent misrepresentation for the Intervenors to make such an assertion since there is no pending action, in Uruguay or elsewhere, in which the Intervenors have sued the Petitioner, or any individuals affiliated with the Petitioner, in connection with any claims related to "fraud, breach of fiduciary duty, self-dealing and corporate waste."  *See* Memorandum of Law in Support of Motion at 2, ECF No. 31.

The Intervenors' Memorandum of Law in support of the Motion also spans several pages of background detailing the parties, the claimed disputes, the claimed value of the NSAL shares held by Peers, and seeks to link up Petitioner's pending RMI Action with Peers' (alleged) shareholder dispute.  However, consideration of such background is not required for the resolution of the Motion.  Where the Intervenors claim that the RMI Action was filed to get them to withdraw their claims and surrender their NSAL shares it is axiomatic that claims which have never been commenced cannot be withdrawn, that neither Intervenor owns any NSAL shares in his own name, and there is no connection between the RMI Action filed against the Intervenors and Peers' unasserted, purported claims that could not, in any event, be filed against the Petitioner.

That Petitioner did not avail itself of discovery on an expedited basis in the RMI Action does not foreclose it from seeking discovery assistance under section 1782 and Intervenors cite to no authority in support of such a position.  Also, the intimation that Petitioner has not undertaken to serve Intervenors with the RMI Complaint is simply false.  NSAL's most recent submission to the RMI court provides, in relevant part, as follows:

### *Efforts To Serve Defendants with Summons and Complaint.*

On or about December 12, 2024 – and subsequent to several rounds of interviewing multiple Hague Convention service-of process vendors – Plaintiff engaged a leading Hague

Convention service-of-process vendor to effect such service upon Defendants. On or about that date, Plaintiff paid the selected vendor in excess of $5,000 for the requested service. Thereafter, this Hague Convention service vendor promptly (i) arranged for the labor-intensive work of having the Summons and Complaint formally translated into Spanish, and (ii) prepared the various Hague Convention service forms for presentation to the Attorney General for the Republic of the Marshall Islands for his consideration and execution of those forms. These papers were presented to the Attorney General on or about January 8, 2025. The Attorney General executed these documents on January 15, 2025, and, on January 16, 2025, the executed documents were forwarded to the appropriate Central Authority (as that term is defined and used in the Hague Convention) in South America for service upon Defendants.

It is Plaintiff's understanding that, once the executed Hague Convention service papers reach South America, it generally takes at least several months until the Central Authority in South America effects service locally upon the specified defendants, and that there is no procedural or other tool available to encourage or otherwise have the Central Authority effect Hague Convention service in a more expedited manner.

In the meantime, and in parallel with Plaintiff's efforts to effect service via the Hague Convention, on December 13, 2024, Plaintiff's counsel sent an email to Ms. Mariela Ruanova of Dentons, counsel for Defendants in Montevideo, Uruguay (who had previously corresponded on behalf of Defendants with counsel for Plaintiff), attaching a copy of the Summons and Complaint and including a request as follows: "Kindly let us know whether you will accept or waive service upon your clients in exchange for a mutually agreeable date for your clients' responsive pleading." To date, Plaintiff's counsel has not received any response from Ms. Ruanova.

*See* Plaintiff's Submission In Response To January 14, 2025 Order at 4-5 attached hereto as Exhibit 2.

Intervenors' effort to bootstrap an additional requirement on the subpoenas to tie the requested documents to the claims at issue in the foreign proceeding is without basis in law. A subpoena need not spell out for the subpoena respondent why the documents are being requested. Were it otherwise, Rule 45 and the caselaw construing it, and the caselaw construing Section 1782, would certainly provide guidance. Thus it is unsurprising that the Intervenors' novel argument is unaccompanied by any caselaw. Intervenors ignore the obvious fact that the subpoenas seek to uncover documents substantiating the Petitioner's fraud allegations which are based on the thorough (and ongoing) investigation of the Intervenors' fraudulent actions. Intervenors'

contention that the further subpoenas are new and broader is misplaced.  The only new subpoena respondent is one served on JPMorgan Chase Bank NA which was discovered to have supplanted CitiMortgage as the lender for the property owned by Boca World LLC, a company which is beneficially owned by the Intervenors.  Also, all of the subpoenas requested ESI and there was no broadening of the scope of the subpoenas.  Several of the subpoenas were, however, reissued to correctly state the Respondent's addresses for service.  The contention that the subpoenas make no attempt to tie the time period and the documents to the subpoena indicates, perhaps, that the Intervenors have not taken the time to consider the factual allegations raised by the Petitioner's Complaint filed in the RMI Action.  *See* ECF No. 3, Exhibit 1.

Simply put, the Intervenors' assertion that Petitioner took the considerable time and expense to investigate the Intervenors' fraud schemes, and to then file a lawsuit in the RMI simply to "head off purported claims" set forth in a lawyer's demand letter is absurd.  The casual characterization of the Petitioner's extensive, factually detailed allegations of the Intervenors' fraudulent wrongdoing as "baseless, unsubstantiated allegations in the sham MI Complaint" is evocative only of the maxim that an empty can rattles the most.  The Intervenors' lack of any substantive response to Petitioner's RMI Action only underscores the necessity of discovery assistance sought in this action, as support for the Petitioner's effort to recover the funds looted from the Petitioner as part of the Intervenor' long-running fraud schemes.

## **LEGAL STANDARD**

The aim of 28 U.S.C. § 1782 is to provide assistance with obtaining evidence for use in a proceeding before a foreign or international tribunal. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 262 (2004).  On such an application the reviewing court must determine if the application has made a *prima facie* showing of three requirements: "(1) the person from whom

discovery is sought resides or is found in the district to which the application is made; (2) the discovery is for use in a proceeding before a foreign tribunal; and (3) the application is made by a foreign or international tribunal or any interested person." *In re Ishihara Chem. Co.*, 251 F.3d 120, 124 (2d Cir. 2001).

As set forth below, Petitioner satisfied all required elements and discretionary factors and the Intervenors' Motion should therefore be denied. Intervenors do not challenge that Petitioner is an interested person, nor that the entities from whom discovery is sought are found within the district. Instead, the Intervenors' Motion is premised on alleged procedural restrictions in the foreign proceeding, a baffling characterization of the RMI Action as not a "true" foreign proceeding, and facial challenges to the subpoenas, concerning which they not only lack standing to raise but also which miss the mark in any event.

Intervenors cite to *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79 (2d Cir. 2004) in support of their Motion. In *Schmitz* the Second Circuit held that there was no abuse of discretion in denying a discovery application because the German Ministry of Justice, as well as a German city prosecutor, both asked the court to deny the application because the sought after discovery related to an ongoing criminal investigation which would be jeopardized.

An applicant need make only a *de minimis* showing that the information sought is "for use" in a foreign proceeding. *In re Application of Shervin Pishevar,* 439 F. Supp. 3d 290, 302-03 (S.D.N.Y. 2020). "The plain meaning of the phrase 'for use in a proceeding' indicates something that will be employed with some advantage or serve some use in the proceeding." *Mees v. Buiter,* 793 F.3d 291, 298 (2d Cir. 2015). The term "for use" is afforded a "broad interpretation," and the "sought-after evidence need not be admissible or even discoverable under the rules of the foreign

jurisdiction." *See, Deposit Ins. Agency v. Leontiev*, No. 17 Misc. 414 (GBD) (SN), 2018 U.S. Dist. LEXIS 122705, *8, 2018 WL 3536083, at *3 (S.D.N.Y. July 23, 2018) (internal citations omitted).

Both the Supreme Court and the Second Circuit have acknowledged that Congress intended to provide a liberal avenue to discovery in aid of foreign proceedings. *See Intel*, 542 U.S. at 247-48; *Brandi-Dohrn*, 673 F.3d at 80 ("[T]he statute has, over the years, been given increasingly broad applicability") (citation and quotations omitted); *In re Edelman*, 295 F.3d 171, 179-80 (2d Cir. 2002) ("In sum, Congress has expressed as its aim that the statute be interpreted broadly . . . ."). Further, the discretion district courts enjoy when evaluating a Section 1782 application is limited. If the application meets the statutory requirements of Section 1782, it should be denied only in circumstances under which "granting discovery . . . would run counter to the statute's aims of assisting foreign courts and litigants and encouraging foreign jurisdictions to provide reciprocal assistance to American courts." *Brandi-Dohrn*, 673 F.3d at 83–84; *see also, Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1097 (2d Cir. 1995).

Intervenors' citation to the *Euromepa* decision at the conclusion of their memorandum in support of their Motion is puzzling. In *Euromepa* the Second Circuit reversed and remanded the denial of a discovery petition since it found that a reviewing district should not delve into the vagaries of foreign law -- including discovery that might be available in the foreign court as Intervenors have suggested in their Motion.  Intervenors' lament about alleged "irreparable harm" caused by the discovery sought herein should be ignored as the Intervenors fail to how the discovery would cause such harm.  Certainly, there was nothing submitted with this Motion, nor with the Intervenors' prior letter motion (ECF No. 18), where the Intervenors explained the alleged "irreparable harm" they would suffer if discovery is permitted.  The simplistic invocation of such a legal phrase, without more, lays bare the weakness of the positions staked out by the Intervenors.

14

## ARGUMENT

**A.    INTERVENORS HAVE FAILED TO SHOW CLEAR ERROR OR THAT THE COURT'S DISCOVERY ORDER CONSTITUTES MANIFEST INJUSTICE**

As a threshold matter, the Intervenors fail to address the legal standard on a motion to reconsider or vacate an order issued pursuant to 28 U.S.C. § 1782, which requires a showing of "clear error" or that the order constitutes "manifest injustice." *See, Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.,* 956 F.2d 1245, 1255 (2d Cir. 1992); *see also, In re WinNet R CJSC*, 16-MC-484 (DLC), 2017 U.S. Dist. LEXIS 97164, 2017 WL 2728436, at *1 (S.D.N.Y. June 23, 2017) (applying a "clear error" standard in a section 1782 context, and noting that "[a] motion for reconsideration should be granted only when the defendant identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.") (citation omitted)). The Intervenors make no showing of "clear error" or "manifest injustice." For this reason alone, the Court should deny the Motion.

**B.    THE COURT CORRECTLY DETERMINED THAT PETITIONER SATISFIED THE DISCRETIONARY FACTORS APPLIED IN SECTION 1782 CASES**

If all three statutory requirements are satisfied, then "a district court is free to grant discovery in its discretion." *See, In re Metallgesellschaft*, 121 F.3d 77, 78 (2d Cir. 1997); *see also, Schmitz v. Bernstein Liebhard & Lifshitz, LLP,* 376 F.3d 79, 83–84 (2d Cir. 2004).

The Supreme Court has identified four nonexclusive factors — known as the *Intel* factors — to guide the district court's exercise of this discretion: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding," in which case "the need for § 1782(a) aid generally is not as apparent"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal court judicial assistance"; (3) "whether the § 1782(a) request

conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is "unduly intrusive or burdensome." *Intel,* 542 U.S. at 264-65.

In this case, Petitioner seeks discovery from non-party financial institutions that are either depositary banks or that are commonly known to act as correspondent or intermediary banks for U.S. dollar-denominated wire transfers passing from domestic banks to international banks, and vice versa. Consequently, the discovery does not appear within the immediate reach of the RMI Court. Further, 28 U.S.C. § 1782 does not impose any sort of "quasi-exhaustion requirement" either. *Mees,* 793 F.3d  at 303.  That is, an applicant need not "tr[y] and fail[] to obtain the discovery" in a foreign tribunal before filing a section 1782 application in the United States.  *Id.* (*citing Metallgesellschaft*, 121 F.3d at 79).

In any event "If there are two equally valid means to the same end and neither is meant to restrict use of the other, the choice of one over the other is not 'circumvention.' For example, if two trains run from Lagos to Abuja but one makes fewer stops along the way and therefore completes the journey in less time, a passenger who chooses the faster express train has not 'circumvented' the slower local."  *See Fed. Republic of Nigeria v. VR Advisory Servs., Ltd.*, 27 F.4th 136, 153 (2d Cir. 2022).

Intervenors' assertion that Petitioner has circumvented RMI law by acting "prematurely" in seeking discovery assistance in this action is not only baseless, but it is inconsistent with the body of caselaw interpreting section 1782.  In *Mees v. Buiter*, 793 F.3d 291, 299-300 (2d Cir. 2015), the Second Circuit rejected the argument that discovery assistance is unavailable where no foreign proceeding is pending, unless the applicant shows that it could not commence a foreign proceeding with the sought after discovery, reasoning:

> Adopting that rule would undermine the holding of *Intel* that the foreign proceeding need not be pending, so long as it is "within reasonable contemplation." 542 U.S. at 259. *Intel* gave no indication that courts should evaluate applications for proceedings within reasonable contemplation under a different framework from other applications by limiting them to discovery used to commence the proceeding. Rather, *Intel* explained that "[i]t is not necessary for the adjudicative proceeding to be pending at the time the evidence is sought, but *only that the evidence is eventually to be used in such a proceeding*." *Id.* (emphasis added) (alterations and internal quotation marks omitted). "[E]ventual[ ] . . . use [] in such a proceeding" plainly encompasses use at any point in the proceeding. And requiring an applicant to wait until the stage in the foreign proceeding at which the materials are to be used before applying for discovery under § 1782 — which might entail multiple, separate applications — would be contrary to the statute's aim of "providing efficient means of assistance to participants in international litigation." *Brandi-Dohrn*, 673 F.3d at 81 (internal quotation marks omitted).

*Mees*, 793 F.3d at 299-300 (emphasis supplied). Thus, merely because discovery in the RMI Action had not commenced prior to Petitioner seeking discovery assistance under section 1782 in this action is of little consequence so long as the discovery is "eventually to be used" in the RMI Action.

Moreover, the Second Circuit in *Mees* addressed the district court's finding that the discovery application "appear[ed] to be an attempt to circumvent the foreign proof-gathering restrictions, in that the extent of the discovery requested was far broader than that which appears to be available in the Dutch courts." *Id.* at 303. The Second Circuit emphasized, that:

> "1782 contains no foreign-discoverability requirement. While we have instructed that 'district judges may well find that in appropriate cases a determination of discoverability under the laws of the foreign jurisdiction is a useful tool in their exercise of discretion under section 1782,' . . . that observation does not 'authorize denial of discovery pursuant to § 1782 solely because such discovery is unavailable in the foreign court, but simply . . . allow[s] consideration of foreign discoverability (along with many other factors) when it might otherwise be relevant to the § 1782 application' . . . . We do not understand the district court's analysis to be to the contrary, but note the issue to emphasize that the availability of the discovery in the foreign proceeding should not be afforded undue weight."

*Id.*

Here, Intervenors do not even attempt to argue that the discovery Petitioner seeks under section 1782 is not available in the RMI Action. Rather, they simply argue that discovery has not

yet commenced in that action. Thus, the fact that discovery in the RMI Action itself may not yet be available does not support a finding that Petitioner sought to circumvent RMI law by applying for discovery assistance under section 1782 so long as such discovery is eventually to be used in the RMI Action.

## C.    INTERVENORS CANNOT DEMONSTRATE ANY UNDUE BURDEN

Intervenors rely on Rule 45(d)(3)(A)(iv) in a threadbare effort to quash Petitioner's subpoenas on the basis they present an undue burden and are unduly intrusive. "Motions to compel and motions to quash a subpoena are both 'entrusted to the sound discretion of the court." *See, In re Fitch, Inc.*, 330 F.3d 104, 108 (2d Cir. 2003) (*quoting United States v. Sanders*, 211 F.3d 711, 720 (2d Cir. 2000)). For the reasons that follow, and in this Court's exercise of its sound discretion, Intervenor's Motion should be denied.

In *In re Auto-Guadeloupe Investissement*, No. 12-mc-221 (RPP), 2012 U.S. Dist. LEXIS 147379, 2012 WL 4841945 (S.D.N.Y. Oct. 10, 2012) the court partially quashed a subpoena issued under 28 U.S.C. § 1782 because upon consideration of a detailed argument presented by the <u>subpoenaed party</u>, the court found that compliance with the subpoena would be "….unduly burdensome, time-consuming, and expensive search of its files for many documents that are irrelevant …" *In re Auto-Guadeloupe Investissement,* 2012 U.S. Dist. LEXIS 147379, at \*29.  The court concluded "[I]f the [district court] . . . suspects that the request is a 'fishing expedition' or a vehicle for harassment, the district court should deny the request." *Id. citing In re Request for Assistance from Ministry of Legal Affairs of Trinidad & Tobago,* 848 F.2d 1151, 1156 (11th Cir. 1988)*, abrogated on other grounds by Intel Corp.,* 542 U.S. at 249.

"Whether a subpoena imposes an 'undue burden' depends on factors including relevance, the need of the party for the documents, the breadth of the document request, the time period

covered by it, the particularity with which the documents are described, and the burden imposed." *See In re Biovail Corp. Secs. Litig.*, 247 F.R.D. 72, 74 (S.D.N.Y. 2007). The party seeking discovery bears the initial burden of showing relevance. *See, Mandell v. The Maxon Co., Inc.*, No. 06 Civ. 460 (RWS), 2007 U.S. Dist. LEXIS 99238, at *1, 2007 WL 3022552 (S.D.N.Y. Oct. 16, 2007). Petitioner met this initial burden when this Court initially granted the Discovery Order.

At this stage, it would be up to the subpoena Respondents, and not the Intervenors, to substantiate their burden of proving that the subpoenas impose an undue burden on them as a non-party." *See, Usov v. Lazar*, 2014 U.S. Dist. LEXIS 122735, at *37, 2014 WL 4354691 (S.D.N.Y. Aug. 22, 2014). No subpoena Respondent has endeavored to do so at this juncture.

The caselaw relied on by Intervenors is either inapposite, factually distinguishable or simply not supportive of their position. In *Insured Advocacy Group, LLC v. Spartan Services Corp.*, No. 23-cv-07212 (LJL), 2024 U.S. Dist. LEXIS 216028, 2024 WL 48935380 (S.D.N.Y. Nov. 26, 2024) this Court only partially granted relief to quash subpoenas where it determined following review the subpoenas in question were irrelevant as not supported by a claim pleaded in the case (a conversion cause of action, along with other claims, had previously been demised by the Court) which is plainly not the situation here. *Insured Advocacy Group* was also not a section 1782 case and the discovery sought, but denied, was characterized as prejudgment financial discovery and found by the court as "… a fishing expedition, disproportionate to the needs of the case." *Insured Advocacy Group*, 2024 U.S. Dist. LEXIS 216028, at *7.

*Morelli v. Alters,* No. 19-cv-10707-GHW, 2020 U.S. Dist. LEXIS 207362, 2020 WL 6508858 (S.D.N.Y. Nov. 5, 2020), which was also not a section 1782 case, the court determined the subpoenas in question had "… little, if any, relevance to the single loan at issue in Plaintiff's case." *Morelli*, 2020 U.S. Dist. LEXIS 207362, at *16. Moreover, the issued subpoenas were

deemed to have been issued as part of a "fishing expedition for evidence to support" proposed amended counterclaims, which the court denied as untimely and prejudicial. *Id.* at *1.

*Hedgeye Risk Mgmt. v. Dale*, No. 21-CV-3687 (ALC) (RWL), 2023 U.S. Dist. LEXIS 116323, 2023 WL 435076 (S.D.N.Y. July 5, 2023) stands for the proposition that clearly overbroad subpoenas will be quashed. "Each document request starts with 'All Documents' or 'All Communications,' which often is a red flag for overbreadth and undue burden." *Hedgeye*, 2023 U.S. Dist. LEXIS 116323, at *4. The court found that the subpoenas would remain quashed but also directed the parties to meet and confer since "… some discovery directly from Longbow is appropriate." *Id.* at *6. Here, the Intervenors have not in any way seriously challenged the clear relevancy of the discovery sought from the subpoena respondents and have also not raised the prospect of a meet and confer with the Petitioner regarding the subpoenas and thus *Hedgeye* is largely inapposite.

The discovery Petitioner seeks is neither intrusive nor burdensome, and Intervenors' arguments to that effect further demonstrate their intention to seek any port in a storm. It should be clarified that a party like the Intervenors which is resisting discovery "does not have standing to challenge discovery directed at []third parties," absent "a claim of privilege or a proprietary interest in the subpoenaed matter." *In re Ex Parte Application of Kleimar N.V.*, 220 F. Supp. 3d 517, 520 (S.D.N.Y. 2016); *see also, e.g., Estate of Ungar v. Palestinian Authority*, 400 F. Supp. 2d 541, 555 (S.D.N.Y. 2005) (granting a third party's motion to quash regarding the subpoena directed at it, but denying its motion to quash "all other third-party subpoenas" for "lack of standing"). The United States Supreme Court has previously made it clear that there is no "… expectation of privacy concerning the information kept in bank records." *See, United States v. Miller*, 425 US 435, 442 (1976).

20

Furthermore, the Intervenors lack standing to assert any burdens of production which may be encountered by the subpoena Respondents. *See, PKF Intern. Corp. v. IBJ Schroder Leasing Corp.*, No. 96 Civ. 1816 (SAS)(HBP), 1996 U.S. Dist. LEXIS 13505, at *13, 1996 WL 525862, *4 (S.D.N.Y. Sept. 17, 1996) ("Although [the resisting party] has standing to assert its putative privilege, the [resisting party] does not have standing to assert grounds that do not implicate [its] rights. Specifically, [the resisting party] does not have standing to contest the subpoena on the grounds that it does not allow a reasonable time for compliance and imposes an undue burden since it is not [the resisting party's] employees that would be burdened by the production but the Bank's employees."). The Court should simply disregard Intervenors arguments asserting an undue burden on the subpoena Respondents. Therefore, Intervenors have no standing to argue on behalf of the subpoena Respondents that the discovery sought would be unduly intrusive or burdensome *See, In re JSC BTA Bank*, 577 F. Supp. 3d 262, 268 (S.D.N.Y. 2021)  ("the respondents [13 New York correspondent banks] are in the best position to know if the requests are burdensome, and they will have an opportunity to object to the subpoenas.).

The subpoenas also do not violate Rule 45 because there is a clear nexus between the information sought therein (*i.e.,* where the stolen money is presently located) and the litigation in the RMI (efforts to recover the stolen money).  The section 1782 discovery sought in this case should reveal transactions made by Intervenors in US dollars because such transfers almost certainly have passed through the subpoena Respondents, financial institutions which are situated in New York, and with whom investigation reflects the Intervenors have maintained accounts.  The document demands set forth in the subpoenas do not seek private personal information regarding either of the Lopezes and rather only documentation regarding the financial transactions within the accounts believed to be held at the financial institutions which have been served with subpoenas.

The requests are also proportional to the needs of the case since over $10,000,000 has been looted from the Petitioner and there is currently no meaningful security for these claims and the ability to easily move and transfer money in today's world necessitates that Petitioner take measures to locate and secure funds which have been stolen from it. The demands are not unduly intrusive and certainly not designed to harass either the Lopezes or the subpoena Respondents. For instance, the demands seek only records concerning Intervenors and not any other Lopez family member. This is notwithstanding that it has been determined during Petitioner's investigation that the scheme carried out by the Intervenors in furtherance of their unlawful actions against the Petitioner has benefitted numerous members of the Lopez family.

## CONCLUSION

For all of the foregoing reasons, the Intervenors' Motion should be denied, the stay on subpoena compliance should be lifted, and Petitioner should be granted all further relief which the court deems just and appropriate in the circumstances.

Dated: New York, NY
      January 17, 2025

                          Respectfully submitted,

                          The Petitioner,
                          NAVIOS SOUTH AMERICAN
                          LOGISTICS INC.

By:                      
                          Patrick F. Lennon, Esq.
                          Kevin J. Lennon, Esq.
                          Elliott T. Williams, Esq.
                          The Graybar Building
                          420 Lexington Avenue – Suite 300
                          New York, NY 10170
                          (T) (212) 490-6050
                          (F) (212) 490-6070
                          plennon@lmplaw.net
                          klennon@lmplaw.net
                          elliott.williams@lmplaw.net

22