UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X
In Re: Navios South American Logistics Inc.

------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 02/03/2025

24-mc-575 (LJL)

OPINION AND ORDER

LEWIS J. LIMAN, United States District Judge:

Intervenors Claudio Pablo Lopez and Carlos Augusto Lopez (the "Lopezes" or "Intervenors"), move pursuant to 28 U.S.C. § 1782 and Federal Rule of Civil Procedure 45(d) to quash all subpoenas issued by Applicant Navios South American Logistics ("NSAL" or "Applicant") pursuant to this Court's December 18, 2024 *ex parte* discovery order (the "December 18 Order"). Dkt. No. 31.

For the reasons that follow, Intervenor's motion is granted in part.

## BACKGROUND

NSAL is one of the largest infrastructure and logistics companies in the Hidrovia region of South America and is incorporated in the Republic of the Marshall Islands ("RMI"). Dkt. No. 21 ¶ 3.

Intervenors Carlos and Claudio Lopez are brothers. *Id.* The Lopezes' family are the beneficial owners of Peers Business Inc. ("Peers"), which is in turn a 36.2% minority shareholder of NSAL. Dkt. No. 31 at 2; Dkt. No. 30 ¶ 4; Dkt. No. 32 at 3 n.2. The remaining 63.8%[1] of NSAL is owned by its Chairwoman of the Board, Angeliki Frangou. Dkt. No. 31 at 2; Dkt. No. 30 ¶ 4.

---

[1] Although certain of Intervenors' filings state that Frangou owns 68.8% of Applicant, that seems to be a typo. *Compare* Dkt. No. 31 at 2 *with* Dkt. No. 30 ¶ 4, Dkt. No. 30-1 at 3. The true ownership percentage is immaterial to this motion.

Pursuant to a written employment agreement, Carlos Lopez worked as NSAL's Chief Commercial Officer-Shipping Division from January 2008 until his resignation in October 2022. Dkt. No. 21 ¶ 3; Dkt. No. 30-11; Dkt. No. 30 ¶ 9.

Claudio Lopez was employed pursuant to a written employment agreement as NSAL's Chief Executive Officer and Vice-Chairman of the Board from January 2008 to August 2024. Dkt. No. 21 ¶ 3; Dkt. No. 30 ¶ 8; Dkt. No. 30-10. On August 7, 2024, Claudio Lopez, through Freshfields LLP, his New York counsel, sent a letter to NSAL's Board demanding the production of certain documents in connection with purportedly conflicted transactions that the Board had approved. Dkt. No. 30 ¶ 9; Dkt. No. 30-13.[2] On August 13, 2024, NSAL terminated Claudio Lopez without cause. Dkt. No. 30-12; Dkt. No. 30 ¶ 9.

Over the course of the past few months, the parties have engaged in a series of litigations against one another around the world, arising from transactions executed by the Lopezes and NSAL, the Lopezes' employment with NSAL, and Peers' beneficial minority ownership of NSAL.

## A.    The Uruguayan Action

On October 1, 2024, Peers filed suit seeking access to NSAL's books and records in connection with claims that Frangou intended to dilute and/or appropriate the Lopez family's minority shares by approving a conflicted $190 million loan to NSAL by Frangou, convertible to shares in five years at a fictitious pre-conversion equity value of $330 million (the "Uruguayan Action"). Dkt. No. 30 ¶ 5; Dkt. No. 30-1. On December 2, 2024, the Uruguayan Court ordered

---

[2] NSAL disputes that that the Lopezes are represented by Freshfields in New York on these or related matters. NSAL submitted an email dated November 5, 2024, from the attorney named as the sender of Freshfields' January 13, 2025 letter, stating: "Please be advised that Freshfields does not represent Mr. Claudio Lopez or Mr. Carlos Lopez." Dkt. No. 21-1. It is unclear whether, among other possibilities, Freshfields formerly represented the Lopezes and ceased to do so or if it represents or represented Peers. The issue is irrelevant for purposes of the Court's analysis of the Section 1782 application.

NSAL to provide the requested books and records to Claudio Lopez and Peers within 15 days of the order. Dkt. No. 30-1; Dkt. No. 21 ¶ 15. NSAL was served with the Uruguayan Action petition and discovery order of the Uruguayan Court on December 3, 2024. Dkt. No. 30 ¶ 7; Dkt. No. 21 ¶ 12. On December 11, 2024, NSAL appeared in the Uruguayan Action and filed an appeal of the Uruguayan Court's discovery order. Dkt. No. 30 ¶ 7; Dkt. No. 21 ¶ 23. NSAL's challenge to the Uruguayan discovery order is currently pending. Dkt. No. 30 ¶ 7; Dkt. No. 21 ¶ 24.

### B.    The RMI Action

NSAL commenced litigation against the Lopezes in the High Court of the Republic of the Marshall Islands (the "RMI High Court") on November 27, 2024. *See NAVIOS South American Logistics, Inc. v. Claudio Pablo Lopez et al.*, 2024-01839 (R.M.I. High Ct.) (the "RMI Action"). Dkt. No. 28 ¶ 2. In the RMI Action, NSAL generally asserts claims against the Lopezes arising from the Lopezes' alleged misdeeds during their employment with NSAL. Dkt. No. 3 at 7–51[3]; Dkt. No. 30 ¶ 10. NSAL alleges that the Lopezes "orchestrated a scheme in which a small handful of employees at [NSAL] were directed to create fake and forged invoices and to falsify accounting records in order to conceal improper payments made by [NSAL], at [the Lopezes'] request, to [the Lopezes] and members of [the Lopezes'] family. Dkt. No. 3 at 8, 13–30; Dkt. No. 21 ¶¶ 5–9. In addition to this alleged scheme, the complaint states that the Lopezes authorized the disclosure of confidential information regarding certain supplier bids to a supplier affiliated with the Lopezes to rig the bidding process in the affiliate's favor, Dkt. No. 3 at 10–11, 30–71; Dkt. No. 21 ¶ 10, and used NSAL's "petty cash" and other accounts for luxury personal and family expenses entirely unconnected to any business purpose, Dkt. No. 3 at 11, 37–40; Dkt. No. 21 ¶ 11. The complaint seeks monetary and declaratory relief and asserts claims for breach of the duty of loyalty, breach

---

[3] Citations to this document refer to the pagination in the ECF heading.

of the duty of good faith, fraud, conversion, civil conspiracy, and unjust enrichment.  Dkt. No. 3 at 42–50.

NSAL engaged a service-of-process vendor to effect service of the summons and complaint in the RMI Action upon the Lopezes pursuant to the Hague Convention.  Dkt. No. 32 at 10–11 (quoting Dkt. No. 32-2 at 4–5).  The vendor translated the summons and complaint into Spanish and presented the documents to the Attorney General for the Republic of the Marshall Islands for consideration and execution.  *Id.*  The documents were executed on January 15, 2025, and on January 16, 2025, were forwarded to the appropriate Central Authority in South America for service upon the Lopezes.  *Id.*[4]  NSAL represents that "once the executed Hague Convention service papers reach South America, it generally takes at least several months until the Central Authority in South America effects service locally upon the specified defendants, and that there is no procedural or other tool available to encourage or otherwise have the Central Authority effect Hague Convention service in a more expedited manner."  Dkt. No. 32 at 11 (quoting Dkt. No. 32-2 at 5).  To date, the complaint in the RMI Action has not been served on the Lopezes.  Dkt. No. 28 ¶ 2.  However, on December 13, 2024, NSAL's counsel sent an email to the Lopezes' Uruguayan counsel attaching a copy of the summons and complaint in the RMI Action.  Dkt. No. 32 at 11 (quoting Dkt. No. 32-2 at 5).  The email asked the Lopezes' counsel to "[k]indly let us know whether you will accept or waive service upon your clients in exchange for a mutually agreeable

---

[4] The Hague Convention requires each signatory to establish a "Central Authority" to serve defendants within the country through a method compatible with the receiving country's domestic law.  *See Smart Study Co. v. Acuteye-Us*, 620 F. Supp. 3d 1382, 1392 (S.D.N.Y. 2022); *see also Advanced Aerofoil Techs., AG v. Todaro*, 2012 WL 299959, at *2 (S.D.N.Y. Jan. 31, 2012) ("Service through a country's Central Authority is the primary method of service permitted under the Hague Convention.").  Although Central Authorities are country-specific, NSAL does not specify to which country's Central Authority the executed documents were forwarded.

date for your clients' responsive pleading." *Id.* (quoting Dkt. No. 32-2 at 5). The Lopezes did not respond to that email. *Id.*

On January 3, 2025, the Lopezes filed a motion in the RMI High Court to dismiss the RMI Action for lack of personal jurisdiction. Dkt. No. 28 ¶ 3; Dkt. Nos. 28-1, 28-2, 28-3.

Also on January 3, 2025, the Lopezes filed an emergency motion in the RMI High Court to confirm a stay of discovery and for a temporary restraining order ("TRO"). Dkt No. 36 at 4.[5] The Lopezes' TRO motion sought an order restraining NSAL from proceeding with the instant action before this Court for discovery pursuant to Section 1782 as well as from proceeding with an attachment proceeding in New York Supreme Court (discussed *infra*). *Id.* Applying a test for injunctive relief highly similar to that applied in the United States, the RMI High Court denied the Lopezes' motion based solely on the determination that the Lopezes failed to establish that they would suffer imminent and irreparable harm absent injunctive relief. *Id.* at 9–12.

### C.    The NYS Attachment Action

On December 5, 2024, NSAL initiated a case in New York State Court by filing an *ex parte* petition for an order of attachment over the Lopezes' assets (the "NYS Attachment Action"). Dkt. No. 36 at 6. On December 6, the court granted NSAL a prejudgment order of attachment over the Defendants' assets for the sum of $10,092,571. *Id.* On December 16, NSAL served copies of the pleadings in the NYS Attachment Action on the Lopezes. *Id.* Briefing on the NSAL's motion for an order of attachment and motion to confirm the attachment order is currently underway. *Id.*

### D.    The Section 1782 Application

On December 16, 2025, NSAL moved for an *ex parte* order pursuant to 28 U.S.C. § 1782(a) allowing it to issue subpoenas to American Express Bank, Banco Santander, Bank of

---

[5] Citations to this document refer to the pagination in the ECF heading.

New York Mellon, Boca World LLC ("Boca World"), Citibank, Citimortgage Inc., Standard Bank, UBS Ltd. Wells Fargo Bank, and any other party, or parties, as NSAL may identify as permitted by Rules 30 and 45 of the Federal Rules of Civil Procedure (collectively the "Third Parties"), for use in the RMI Action.  Dkt. No. 10.[6]

On December 18, 2024, the Court granted NSAL's motion, stating that "[t]he grant of the Petition is without prejudice to a challenge to the subpoenas, including their scope, and potential reconsideration of the application of the § 1782 factors."  Dkt. No. 12 (citing *Gushlak v. Gushlak*, 486 F. App'x 215, 217 (2d Cir. 2012) (summary order)).  Subsequently, Applicant issued nine subpoenas to the Third Parties.  Dkt. No. 1-1; Dkt. No. 19 at 2.  On or around December 30, 2024, NSAL issued five more subpoenas.  Dkt. No. 29.  Only one of the later-issued subpoenas was sent to a new recipient, JPMorgan Chase Bank NA, and was sent because NSAL discovered JPMorgan Chase Bank NA to have supplanted one of the original recipients as the lender for the property owned by Boca World.  *Id.*; Dkt. No. 32 at 12.  The remaining four new subpoenas were reissued to correctly state the respondents' addresses for service.  Dkt. No. 32 at 12; *compare* Dkt. No. 1-1 *with* Dkt. No. 29.  At least two of the subpoena recipients responded that they had no responsive documents.  *Id.*  Certain of the other subpoena recipients objected.  *Id.*

On December 23, 2025, the Lopezes filed an order to show cause and supportive filings seeking to intervene and to temporarily stay the December 18 Order.  Dkt. No. 13.  On January 7, 2025, the Court granted the Lopezes' motion to intervene on consent and stayed the Third Parties' obligation to comply with the subpoenas pending the Court's decision on Intervenors' anticipated motion to quash.  Dkt. No. 22.

---

[6] Applicant previously tried to file a petition for discovery assistance on December 10, 12, and 13, 2025, but the petition and supporting documents were rejected due to a filing deficiency.  Dkt. Nos. 1–4, 7–8.

Intervenors filed a motion to quash the subpoenas on January 13, 2025, along with three declarations and a memorandum of law in support of the motion. Dkt. Nos. 27–31. On January 17, 2025, Applicant filed a memorandum of law and three declarations in opposition to the motion to quash. Dkt. Nos. 32–35. On January 22, 2025, Applicant filed a letter informing the Court that the RMI High Court had issued an order denying the Lopezes' motion to stay discovery and for a temporary restraining order in the RMI Action. Dkt. No. 36. On January 24 and 25, 2025, Intervenors filed a reply memorandum of law and two declarations in support of the motion to quash. Dkt. Nos. 37–39.

## DISCUSSION

To be entitled to relief under Section 1782, applicants "must meet several statutory requirements, including that '(1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a foreign proceeding before a foreign [or international] tribunal, and (3) the application is made by a foreign or international tribunal or any interested person.'" *Mangouras v. Squire Patton Boggs*, 980 F.3d 88, 97 (2d Cir. 2020) (quoting *Mees v. Buiter*, 793 F.3d 291, 297 (2d Cir. 2015)); *see In Re BonSens.org*, 95 F.4th 75, 79 (2d Cir. 2024).[7]

"Once the statutory requirements are met, a district court may order discovery under § 1782 in its discretion, taking into consideration the 'twin aims' of the statute, namely, 'providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts.'" *Certain Funds, Accounts &/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 117 (2d Cir. 2015)

---

[7] Additionally, the statute requires that the discovery not be "in violation of any legally applicable privilege." 28 U.S.C. § 1782(a); *see In re Guo*, 965 F.3d 96, 102 n.3 (2d Cir. 2020). Intervenors do not argue that the discovery sought here is in violation of any legally applicable privilege.

(quoting *In re Metallgesellschaft*, 121 F.3d 77, 79 (2d Cir. 1997)); *see In re Pub. Joint-Stock Co. Bank Otkritie Fin. Corp.*, 2023 WL 4928227, at *2 (S.D.N.Y. Aug. 2, 2023).

The Supreme Court has set forth four factors for the Court to consider in the exercise of its discretion:

> (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding,"
>
> (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance,"
>
> (3) whether "the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States," and
>
> (4) whether the requested discovery is "unduly intrusive or burdensome."

*BonSens*, 95 F.4th at 80 (quoting *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65 (2004)).

Intervenors argue that the subpoenas should be quashed for failure to satisfy the second statutory requirement because "the RMI action is not a true 'foreign proceeding.'" Dkt. No. 31 at 10–11 (capitalization normalized), Dkt. No. 39 at 7–8. Intervenors additionally argue that the subpoenas should be quashed based on the first, third, and fourth discretionary *Intel* factors. Dkt. No. 31 at 6–10; Dkt. No. 39 at 4–6, 9–10. Applicant contests each of Intervenors' arguments, arguing that both the statutory requirements and discretionary factors support issuance of the subpoenas. Dkt. No. 32.[8]

---

[8] Applicant also argues that Intervenors' motion to quash should be construed as a motion for reconsideration of the Court's December 18 Order and thus that Intervenors must show "clear error" or "manifest injustice." *Id.* at 15. However, the Court noted in the December 18 Order that the grant of discovery was "without prejudice to a challenge to the subpoenas, including their scope, and potential reconsideration of the application of the § 1782 factors." Dkt. No. 12. As the Second Circuit has held, a subpoena target's due process rights are not violated by an *ex parte*

## I.    Foreign Proceeding

Intervenors argue that the RMI Action does not constitute a true foreign proceeding within the contemplation of Section 1782 because "it will inevitably be dismissed for lack of personal jurisdiction over the Intervenors" and is thus a "sham" proceeding.  Dkt. No. 31 at 10–11, Dkt. No. 39 at 7–8.  The Lopezes argue that they performed all their duties giving rise to NSAL's claims in the RMI Action "in South America, not the RMI, and have no connection with the RMI whatsoever."  Dkt. No. 31 at 19 (citing Dkt. No. 30 ¶¶ 8–10; Dkt. No. 3-1 ¶ 4; Dkt. No. 28-2; Dkt. No. 28-3).  In the RMI Action, NSAL argues that the RMI Court has personal jurisdiction over the Lopezes pursuant to Delaware[9] and RMI law.  Dkt. No. 35 at 23–27.[10]  NSAL also argues that the Lopezes "have waived any objection to personal jurisdiction over them by filing the TRO Motion." *Id.* at 24–25 (citing *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982); *Corporación Mexicana De Mantenimiento Integral, S. De R.L. De C.V. v. Pemex–Exploración Y Producción*, 832 F.3d 92, 101 (2d Cir. 2016)).  NSAL further asserts that the RMI Judiciary Act, 27 MIRC Ch.2 § 251, "provides for jurisdiction over a person who 'commits an intentional act, which is aimed at the Republic and causes harm, the brunt of which is suffered and the person who commits the act knows is likely to be suffered by a resident of the [RMI], in the

---

Section 1782 order because "he can later challenge any discovery request by moving to quash pursuant to Federal Rule of Civil Procedure 45(c)(3)." *Gushlak*, 486 F. App'x at 217; *see also In re Hornbeam Corp.*, 722 F. App'x 7, 10–11 (2d Cir. 2018) (summary order).  The Court therefore declines to construe Intervenor's motion to quash as a motion for reconsideration that would be subject to a higher standard.

[9] "The Marshall Islands have adopted Delaware corporate law." *F5 Cap. v. Pappas*, 856 F.3d 61, 71 n.8 (2d Cir. 2017); *see* 52 Marsh. Is. Rev. Code Part I, § 13 ("This Act shall be applied and construed to make the [corporate] laws of the Republic . . . uniform with the laws of the State of Delaware and other states of the United States of America with substantially similar legislative provisions. Insofar as it does not conflict with any other provision of this Act, the non-statutory law of the State of Delaware and of those other states of the United States of America . . . is hereby declared to be and is hereby adopted as the law of the Republic.").

[10] Citations to this document refer to the pagination in the ECF heading.

[RMI]" and argues that the Lopezes' alleged abuse of their positions as directors and officers of NSAL, an RMI corporation, gives rise to jurisdiction pursuant to that provision. *Id.* at 25 (quoting 27 MIRC Ch.2 § 251(n)). Finally, NSAL argues that under RMI and Delaware law, "[t]he Marshall Islands is a logical location to try a breach of fiduciary duty claim against [directors] arising from their service as directors of a Marshall Islands corporation." *Id.* at 12 (quoting *Frontline, Ltd. v. DHT Holdings, Inc.*, RMI H.Ct. Civil No. 2017-092, Order Denying Motion for Preliminary Injunction (June 7, 2017)).

Intervenors fail to show that their pending motion to dismiss for lack of jurisdiction in the RMI Action warrants an order to quash the subpoenas. The statutory prerequisite that the discovery be "for use in a foreign proceeding" "assesses 'the *practical ability* of an applicant to place a beneficial document—or the information it contains—before a foreign tribunal.'" *BonSens*, 95 F.4th at 80 (quoting *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 131 (2d Cir. 2017)). This is not a particularly onerous standard as the applicant must demonstrate merely that the information is "minimally relevant to the foreign proceeding." *Id.* There must also be a "procedural mechanism by which the [applicant] may inject the discovery it seeks" into the foreign proceeding. *IJK Palm LLC v. Anholt Servs. USA, Inc.*, 33 F.4th 669, 680 (2d Cir. 2022). This standard arises from the comity concerns upon which Section 1782 is based. "If a Section 1782 applicant is not a participant in a foreign proceeding and is not in a position to have a foreign tribunal consider the requested evidence, or if the sought-after information would be of no use in the foreign proceeding, there would be no need in the interests of comity for a United States court to lend its hand to an applicant to obtain evidence in the United States." *In re Ativos Especiais II - Fundo de Investimento em Direitos Creditorios - NP*, 2024 WL 4169550, at *4 (S.D.N.Y. Sept. 12, 2024) (citations omitted).

The anticipated use of the discovery in the foreign proceeding need not be immediate.  In *Intel*, the United States Supreme Court held that Section 1782 does not require that the underlying foreign proceeding even be pending before a district court may authorize discovery.  *See Intel*, 542 U.S. at 259.  Section 1782 requires only that the foreign proceeding be either ongoing or within "reasonable contemplation" of the party seeking relief.  *Id.*  In such early stages of pre-litigation, the foreign authority's jurisdiction may be an open question requiring jurisdictional discovery or, alternatively, may be answered by the defendant's consent only after discovery has taken place pursuant to Section 1782.

The subject of a Section 1782 request may not defeat the obligation to produce documents by the mere expedient of filing a motion seeking dismissal in the foreign jurisdiction and then arguing before the district court that the dismissal motion is meritorious.  Section 1782 does not "condone speculative forays into legal territories unfamiliar to federal judges" given that "[s]uch a costly, time-consuming, and inherently unreliable method of deciding section 1782 requests cannot possibly promote the 'twin aims' of the statute."  *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1099–100 (2d Cir. 1995); *accord Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 82 (2d Cir. 2012).  Where the foreign proceeding has already been dismissed for lack of jurisdiction and where no other foreign proceeding is withing reasonable contemplation, then a Section 1782 request should be denied because the requested information would not satisfy the "for use" test.  *See BonSens*, 95 F.4th at 80–81.  But where the foreign proceeding is currently pending, the court need not await a ruling on jurisdiction that is a matter of conjecture.  "The notion that it would somehow be premature for this Court to allow the requested discovery until the [foreign adjudicator] has determined it has jurisdiction to hear the matter runs contrary to clear and unequivocal case law providing that, to fall within the scope of § 1782(a), a proceeding need only

be 'within reasonable contemplation,' not pending or imminent." *In re Veiga*, 746 F. Supp. 2d 8, 23 (D.D.C. 2010) (quoting *Intel*, 542 U.S. at 259).  Accordingly, district courts have consistently held that "a district court need not await a foreign tribunal's determination that it has jurisdiction before granting an application for a Section 1782 subpoena." *In re Peruvian Sporting Goods S.A.C.*, 2018 WL 7047645, at *5 (D. Mass. Dec. 7, 2018); *accord In re Tovmasyan*, 557 F. Supp. 3d 348, 355 (D.P.R. 2021); *In re Republic of Ecuador*, 2011 WL 4434816, at *6 (N.D. Cal. Sept. 23, 2011); *In re Republic of Ecuador*, 2011 WL 10618727, at *4 (N.D. Fla. Aug. 24, 2011).

Intervenors present no other evidence or argument that the discovery Applicant seeks will not "be employed with some advantage or serve some use in the proceeding" *Accent Delight*, 869 F.3d at 132 (quoting *Mees*, 793 F.3d at 298), or that there is no "procedural mechanism by which [to] inject the discovery . . . into [the] foreign proceedings," *BonSens*, 95 F.4th at 80 (quoting *IJK Palm*, 33 F.4th at 680).  NSAL's jurisdictional allegations and arguments are at least colorable and do not indicate that the RMI Action is a sham such that the evidence sought here could never be used in the proceeding.

Intervenors fail to show that the discovery is not for use in a foreign proceeding before a foreign tribunal and that the motion to quash should be granted on statutory grounds.

## II.    Discretionary Factors

Intervenors argue that the subpoenas should be quashed based on the *Intel* factors because: (1) Applicant does not show why it cannot obtain the discovery it seeks from Intervenors, who are participants in the RMI Action; (2) the Section 1782 request represents Applicant's attempt to circumvent the RMI's discovery rules, and (3) the subpoenas are overbroad and unduly burdensome.  Dkt. No. 31 at 6–10; Dkt. No. 39 at 4–6, 9–10.  The Court discusses each in turn.

### A.    Whether the Person from Whom Discovery is Sought is a Participant

The Supreme Court has stated that "when the person from whom discovery is sought is a participant in the foreign proceeding . . . , the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad," because "[a] foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence." *Intel* 542 U.S. at 264.    The Second Circuit has held that courts evaluating this factor should look not to the literal subpoena recipient but rather to "the real party from whom the documents are sought." *Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 245 (2d Cir. 2018) (citing *Schmitz v. Bernstein Liebhard & Lifshitz, LLP.*, 376 F.3d 79, 85 (2d Cir. 2004)).    "[E]verything else being equal, if the applicant can obtain the records from the party to the foreign proceeding, it should obtain them from that party."  *Ativos Especiais II*, 2024 WL 4169550, at *11; *see also id.* at *10 ("A Section 1782 applicant does not strengthen its application when it seeks documents nominally from a third party when those documents are, in fact, under the control of a party.").

Intervenors persuasively argue that they are the real parties from whom NSAL seeks documents.    Dkt. No. 31 at 6–7; Dkt. No. 39 at 4–6.    According to Intervenors, each of the subpoenas seeks documents concerning Intervenors' financial transactions with the Third Parties, which could be obtained from the Intervenors directly.  Dkt. No. 28 ¶ 2; Dkt. No. 31 at 6–77; Dkt. No. 39 at 5.  Because "the participants in the foreign proceeding would presumably have access to their own bank records[,] . . . these records are within the reach of the foreign tribunal and are not 'unobtainable absent § 1782(a) aid.'"  *Ativos Especiais II*, 2024 WL 4169550, at *11–12 (quoting *Intel*, 542 U.S. at 264) (citation omitted)).  The first *Intel* factor thus "weighs against granting a subpoena against a United States bank seeking the records of participants in the foreign proceeding" absent some reason that the records would not be obtainable from the parties. *Id.*

(citing *In re Saul Klein*, 2023 WL 8827847 (S.D.N.Y. Dec. 21, 2023)); *see also, e.g.*, *Matter of Hranov*, 2024 WL 2193866, at *1 (S.D.N.Y. May 15, 2024); *cf. Ativos Especiais II*, 2024 WL 4169550, at *12 (noting that to the extent the applicant argues the party will be less forthcoming and produce lower-quality records than the third-party subpoena recipient would, "this goes to [intervenors'] compliance with discovery not whether a [foreign] court may order them to produce the materials"). Applicant does not advance any argument that the discovery it seeks here could not be obtained from the Lopezes as parties to the RMI Action. Dkt. No. 32 at 16.[11]

The first factor weighs in favor of Intervenors.

### B.    Receptivity of the Foreign Tribunal

The second discretionary factor is "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Intel*, 542 U.S. at 264. "Second Circuit case law places the burden on the party opposing discovery to show that a foreign court would not be receptive to this assistance." *In re Auto-Guadeloupe Investissement S.A.*, 2012 WL 4841945, at *6 (S.D.N.Y. Oct. 10, 2012) (citing *Euromepa*, 51 F.3d at 1099); *see also In re Hornbeam Corp.*, 2014 WL 8775453, at *4 (S.D.N.Y. Dec. 24, 2014). The Second Circuit has instructed district courts not to "condition discovery on an overt expression from the foreign court that it wants or needs the information" as "[t]he text of the statute authorizes the district court to order discovery not only upon 'request . . . by a foreign tribunal' but also 'upon the application of any interested person.'" *Mees*, 793 F.3d at 303–04 & n.21.

---

[11] Although some of the subpoenas' document requests do seek records that Intervenors conceivably might not possess (e.g. the subpoenas seek production of the Third Parties' documents "concerning" the Lopezes, Dkt. No. 29-1), Applicant fails to articulate the relevance of such records to issues of liability in the RMI Action, *see infra*.

Intervenors do not argue that RMI courts would be unreceptive to Section 1782 discovery. Dkt. Nos. 31, 39. There is some indication that the RMI High Court at least would not be opposed to the discovery sought here as the RMI High Court denied the Lopezes' motion for a TRO or a preliminary injunction restraining NSAL from proceeding with this action. Dkt. No. 36. The Lopezes' motion offered the RMI High Court the opportunity to object to this action, Dkt. No. 20-2, and the RMI High Court denied that motion without expressing any disapproval of the Section 1782 discovery sought here. *Cf. Schmitz*, 376 F.3d at 84 (holding that a Section 1782 application was properly denied where the district court "was faced with specific requests from the German Ministry of Justice and the Bonn Prosecutor to deny Applicants the discovery they sought at this time"); *Euromepa*, 51 F.3d at 1101 ("Since no authoritative declarations by French judicial, executive or legislative bodies objecting to foreign discovery assistance appear in the record, we are unable to accept the district court's conclusion that granting MEPA's discovery request will in fact offend the people of France.").

The second *Intel* factor thus weighs in favor of Applicant. *See Ativos Especiais II*, 2024 WL 4169550, at *12.

### C.    Circumvention of Foreign Proof-Gathering Restrictions

The third *Intel* factor is "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 265. "In the context of § 1782 and the third *Intel* factor, circumvention occurs where the applicant uses a § 1782 application to avoid measures that are intended to restrict certain means of gathering or using evidence." *Fed. Republic of Nigeria v. VR Advisory Servs., Ltd.*, 27 F.4th 136, 153 (2d Cir. 2022); *see also Mees*, 793 F.3d at 303 n.20 (distinguishing between rules of the foreign jurisdiction that "*prohibit* the acquisition or use of certain materials," and rules that merely "*fail to facilitate* investigation of claims"). The Second Circuit has also "rejected any

requirement that evidence sought in the United States pursuant to § 1782(a) be discoverable under the laws of the foreign country that is the locus of the underlying proceeding." *Metallgesellschaft*, 121 F.3d at 79; *see also Intel*, 542 U.S. at 262 n.12 (noting that "[m]ost civil-law systems lack procedures analogous to the pretrial discovery regime operative under the Federal Rules of Civil Procedure."); *Malev Hungarian Airlines v. United Techs. Int'l Inc.*, 964 F.2d 97, 99 (2d Cir. 1992) (acknowledging that Section 1782 was designed to, in part, "prompt foreign courts to follow our generous example and provide similar assistance to our court systems" even if the level of discovery assistance is presently unreciprocated). Instead, Section 1782 "allow[s] consideration of foreign discoverability (along with many other factors) when it might otherwise be relevant to the § 1782 application." *Mees*, 793 F.3d at 303 (quoting *Metallgesellschaft*, 121 F.3d at 79). Thus, the discovery policies of the foreign forum may be considered in the discretionary analysis, though they "should not be afforded undue weight." *Id.*

Intervenors state that "the RMI rules of procedure are modeled after the Federal Rules of Civil Procedure" and that the RMI Rule of Civil Procedure 26(d)(1) ("MIRCP 26(d)(1)"), like Federal Rule of Civil Procedure 26(d)(1), states that "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, or by court order." Dkt. No. 31 at 7 (quoting MIRCP 26(d)(1)). Intervenors argue that because the RMI Action complaint has not yet been served, issue has not been joined, and there has been no Rule 26(f) meet-and-confer or initial conference held, discovery is premature in the RMI Action, and Applicant's pursuit of Section 1782 discovery presents a covert attempt to circumvent MIRCP 26(d)(1). *Id.*

In order to determine whether Applicant's application can, as a matter of law, be said to "circumvent" the RMI Rules of Civil Procedure within the meaning of *Intel*, the Court must first determine whether MIRCP 26(d)(1) is "properly understood as embodying a proof-gathering restriction, or at least a policy preference for use of its processes over other means." *Fed. Republic of Nigeria*, 27 F.4th at 153. The Second Circuit has clarified that "[p]roof-gathering restrictions are best understood as rules akin to privileges that prohibit the acquisition or use of certain materials" *Mees*, 793 F.3d at 303 (citation and emphasis omitted). Accordingly, courts in this district have held that the foreign court's limits on the timing and availability of discovery are not akin to privilege and should instead be viewed as "nothing more than limits on the scope of discovery in those fora, not 'proof-gathering restrictions' within the meaning of *Intel*." *In re Accent Delight Int'l Ltd.*, 2018 WL 2849724, at *4 (S.D.N.Y. June 11, 2018), *aff'd*, 791 F. App'x 247 (2d Cir. 2019); *accord Watkins v. Ellesse LLC*, 2024 WL 4582755, at *7 (S.D.N.Y. Oct. 25, 2024); *In re Gorsoan Ltd. & Gazprombank OJSC*, 2014 WL 7232262, at *8–9 (S.D.N.Y. Dec. 10, 2014), *aff'd sub nom. Gorsoan Ltd. v. Bullock*, 652 F. App'x 7 (2d Cir. 2016).

This distinction between privilege and mere timing concerns is rooted in the principles of comity upon which the *Intel* Court relied. "Where the rules of a foreign jurisdiction prohibit the acquisition or use of a certain type of material, the interests of comity that Section 1782 is intended to serve suggest that the United States court as well should honor those prohibitions and decline to order discovery." *Ativos Especiais II*, 2024 WL 4169550, at *13. Authorizing discovery on a faster schedule than would be available in the foreign proceeding does not offend these principles of comity where the material collected does not contradict any privilege or policy of the foreign court. *See Gorsoan*, 2014 WL 7232262, at *9 ("[P]arties seeking discovery pursuant to Section 1782 need not wait for an outcome in the foreign proceeding to pursue discovery in the

United States."); *accord In re IKB Deutsche Industriebank AG*, 2010 WL 1526070, at *3–4 (N.D. Ill. Apr. 8, 2010). The selection of a faster route does not necessarily indicate that the applicant is attempting to circumvent the foreign discovery process. "If there are two equally valid means to the same end and neither is meant to restrict use of the other, the choice of one over the other is not 'circumvention.'" *Fed. Republic of Nigeria*, 27 F.4th at 153. "For example, if two trains run from Lagos to Abuja but one makes fewer stops along the way and therefore completes the journey in less time, a passenger who chooses the faster express train has not 'circumvented' the slower local." *Id.* Indeed, were it otherwise, and an applicant had to wait for discovery to become available in the foreign forum, that would contradict the well-established principle that an applicant may obtain Section 1782 discovery even if they "ha[ve] yet to commence the foreign proceeding for which discovery is sought, so long as the proceeding is within reasonable contemplation." *Mees*, 793 F.3d at 295; *see Intel*, 542 U.S. at 259.

Intervenors additionally argue that permitting discovery before it would be allowed under MIRCP 26(d)(1) "would drastically interfere with the RMI High Court's ability to manage proceedings before it." Dkt. No. 31 at 7; Dkt. No 39 at 8. But Intervenors provide no explanation of how the discovery sought here would interfere with the RMI High Court's management of the case. Intervenors' argument appears to be premised on the notion that the RMI High Court would be offended if litigants seeking to bring evidence before it were to obtain that evidence through proceedings not managed by that court. But Section 1782 does not permit such an assumption. "A foreign nation may limit discovery within its domain for reasons peculiar to its own legal practices, culture, or traditions—reasons that do not necessarily signal objection to aid from United States federal courts." *Intel*, 542 U.S. at 261. Absent any indication that the foreign court would be unreceptive to the discovery or that the discovery would violate some privilege, assuming the

foreign court's hostility "would serve only to thwart § 1782(a)'s objective to assist foreign tribunals in obtaining relevant information that the tribunals may find useful but, for reasons having no bearing on international comity, they cannot obtain under their own laws." *Id.* Indeed, the RMI High Court declined to issue a temporary restraining order or a preliminary injunction restraining NSAL from proceeding with this action despite the fact that the Lopezes' request for a TRO expressly claimed that allowing this case to proceed would circumvent MIRCP Rule 26(d)(1). Dkt. No. 20-2 at 6–7; Dkt. No. 36. Given that the RMI High Court has expressed no concern about its ability to manage the proceedings before it—despite the Lopezes' request for injunctive relief—the Lopezes' argument rings hollow. *Cf. Schmitz*, 376 F.3d at 84; *Euromepa*, 51 F.3d at 1101.

The third *Intel* factor weighs in favor of Applicant.

### D.      Whether the Subpoenas are Unduly Intrusive or Burdensome

The fourth *Intel* factor is whether the request is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 265.

The Second Circuit has held that parties against whom the requested information will be used have standing to oppose a Section 1782 discovery order on the grounds that a subpoena is "in excess of" what is permitted under the authorizing statute. *In re Sarrio, S.A.*, 119 F.3d 143, 148 (2d Cir. 1997). Intervenors cannot be heard to complain that the subpoenas are burdensome because they are not burdensome to Intervenors and the third parties to whom the subpoenas are addressed have not identified any burden. *See In re Tel. Media Grp. Ltd.*, 2023 WL 5770115, at *11 (S.D.N.Y. Sept. 6, 2023) ("The subpoena cannot be burdensome to Chishti, who is not being asked to produce anything." (citation omitted)); *In re Credito*, 2023 WL 5016497, at *9 (S.D.N.Y. May 24, 2023) (noting that "the Proposed Subpoena cannot be burdensome to the Bellostas, who are not being asked to produce anything"). However, courts in this Circuit have held that the

subject of Section 1782 discovery may object to the discovery requests as overbroad where the requests call for information that goes far beyond anything that would be relevant to the foreign proceeding and are intrusive in scope. *See Tel. Media*, 2023 WL 5770115, at *11 ("[A]s the party against whom the requested information will be used, Chishti has standing to object to the subpoena as overbroad."); *Credito*, 2023 WL 5016497, at *9 (noting that "the Proposed Subpoena cannot be burdensome to the Bellostas, who are not being asked to produce anything" but that "[t]he Bellostas are on somewhat firmer ground when they argue that the Proposed Subpoena is overbroad as to time" (citation omitted)), *report and recommendation adopted sub nom. In re Caterpillar Credito, Sociedad Anonima de Cap. Variable, Sociedad Financiera de Objeto Multiple, Entidad Regulada*, 2023 WL 6938264 (S.D.N.Y. Oct. 20, 2023)); *Union Fenosa Gas, S.A. v. Depository Tr. Co.*, 2020 WL 2793055, at *8 (S.D.N.Y. May 29, 2020) ("[W]here Egypt challenges the breadth of the sought-after discovery, as opposed to the burden it will impose on DTC, the Court finds that the challenge is properly brought."); *In re Salem*, 2024 WL 3249355, at *3 (D. Conn. July 1, 2024) ("Even though Freddy cannot claim undue burden because he is not the respondent, his standing to contest issuance of the subpoena under § 1782 as the party against whom the requested information will be used includes standing to object to the subpoena as overbroad." (citation omitted)).[12]   By objecting on the grounds of overbreadth and intrusion, Intervenors provide the Court necessary information to discharge its obligation to ensure that

---

[12] Applicant relies on *In re Kleimar N.V.*, 220 F. Supp. 3d 517, 520 (S.D.N.Y. 2016) and *Estate of Ungar v. Palestinian Auth.*, 400 F. Supp. 2d 541, 555 (S.D.N.Y. 2005)), but those cases are inapposite.  In *Kleimar*, there is no indication that the party moving to vacate the discovery order and to quash the subpoenas was a person "against whom the requested information [would] be used." *Sario*, 119 F.3d at 148; *see generally Kleimar*, 220 F. Supp. 3d 517.  The court accordingly held that the party had standing to challenge only the subpoena that it had received. *See Kleimar*, 220 F. Supp. 3d at 520.  *Estate of Ungar* did not involve a Section 1782 request.  *See generally Estate of Ungar*, 400 F. Supp. 2d 541.

Applicant's Section 1782 request is consistent with "the twin aims of the statute" of "providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *Metallgesellschaft*, 121 F.3d at 79.  Permitting overbroad and intrusive discovery into materials not relevant to the underlying foreign proceeding does nothing to advance the interests of the foreign forum and, if replicated by foreign countries, would undermine the interests of domestic fora.  District courts accordingly retain broad authority to limit Section 1782 discovery.  *See Malev*, 964 F.2d at 102; *In re Edelman*, 295 F.3d 171, 179 (2d Cir. 2002).

In considering overbreadth, courts evaluating Section 1782 applications borrow from the standards of Federal Rule of Civil Procedure 26.  *See Mees*, 793 F.3d at 302 ("[A] district court evaluating a § 1782 discovery request should assess whether the discovery sought is overbroad or unduly burdensome by applying the familiar standards of Rule 26 of the Federal Rules of Civil Procedure.").  Rule 26 provides that discovery should be "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26.  Although the Section 1782 applicant must satisfy the more relaxed "minimally relevant" standard, *BonSens*, 95 F.4th at 80, the Court may also consider the somewhat more robust Rule 26 standard, *see Ativos Especiais II*, 2024 WL 4169550, at *14.

Intervenors claim that the subpoenas are "grossly overbroad and unduly intrusive" because they "seek virtually every document concerning any of the Intervenors' financial and/or corporate records in the witnesses' possession ever created, with no territorial restriction and an eleven-year

timeframe." Dkt. No. 32 at 8.  The subpoenas seek an expansive array of discovery from the Third Parties including more than a decade's worth of documents "concerning" either of the Lopezes; communications with the Lopezes; documents relating to a specific property in New York; documents evidencing bank accounts, loans, notes, mortgages, credit cards or credit facilities opened and/or maintained by Boca World, including transfers and deposits by the Lopezes.  Dkt. No. 29-1.  Intervenors' concerns are well-founded.

Courts in this circuit have found that the fourth *Intel* factor weighs in favor of granting discovery where the applicant propounded targeted discovery requests to financial institutions seeking information regarding transactions relevant to the underlying foreign proceeding.  *See, e.g.*, *In re Byrne*, 2023 WL 3203811, at *6 (S.D.N.Y. May 2, 2023); *In re Fernando Celso De Aquino Chad*, WL 2502060, at *3 (S.D.N.Y. June 17, 2019); *In re Nat'l Bank Tr.*, 2021 WL 118531, at *3 (D. Conn. Jan. 13, 2021).  Where, for example, the financial documents are sought to show a party's liability (including by establishing specific fraudulent transactions or the sources and amounts of profit derived from misconduct), such documents are discoverable.  *See, e.g.*, *State Farm Mut. Auto. Ins. Co. v. Fayda*, 2015 WL 7871037, at *3–4 (S.D.N.Y. Dec. 3, 2015), *aff'd*, 2016 WL 4530890 (S.D.N.Y. Mar. 24, 2016); *City of Almaty, Kazakhstan v. Ablyazov*, 2017 WL 11699074, at *2 (S.D.N.Y. May 5, 2017); *see also Bank of Crete v. Koskotas*, 1989 WL 46587, at *1 (S.D.N.Y. Apr. 21, 1989) (where plaintiff alleged defendant perpetrated a fraud using accounts in several foreign banks, "the location and nature of defendants' accounts abroad and the banks' records of transactions involving those accounts, is relevant to the liability of defendants in the pending action.").  Such requests fall squarely within the aim of Section 1782.  They serve the interests of comity by providing the foreign tribunal evidence relevant to a matter before it that the tribunal would not have without the assistance of a United States court.  By the same token,

however, courts are often wary of broad prejudgment financial discovery of the targets of litigation. Under Federal Rule of Civil Procedure 26, district courts "generally do not allow pre-judgment discovery regarding a defendant's financial condition or ability to satisfy a judgment . . . on the grounds that such discovery is not relevant to the parties' claims or defenses and is not reasonably calculated to lead to the discovery of admissible evidence." *Insured Advoc. Grp., LLC v. Spartan Servs. Corp.*, 2024 WL 4893580, at *3 (S.D.N.Y. Nov. 26, 2024) (citation omitted); *accord Vincent v. Money Store*, 2012 WL 6622707, at *1 (S.D.N.Y. Dec. 20, 2012).

The subpoenas themselves are extremely broad. Among other document requests, they seek "[d]ocuments in your possession, custody or control, including [electronically stored information ("ESI")], from the years 2013 to the present day, concerning Claudio Pablo Lopez" or "Carlos Augusto Lopez" and "[t]o the extent not produced under any other request herein, books, records and other documents in your possession, custody or control, including any ESI, that are in any way related to, or concerning, Claudio Pablo Lopez" and "Carlos Augusto Lopez." Dkt. No. 29-1.[13] Although Intervenors point out that the document requests do not start with "All Documents" or "All Communications," Dkt. No. 32 at 20, "which often is a red flag for overbreadth and undue burden," *Hedgeye Risk Mgmt., LLC v. Dale*, 2023 WL 4353076, at *2 (S.D.N.Y. July 5, 2023), they also are not limited to documents "sufficient to show" some more narrowly tailored proposition. It is difficult to read them as anything other than a call for "all" responsive documents.

The RMI Action concerns the Lopezes' alleged embezzlement of corporate funds through improper payments, interference with a bidding process for selecting suppliers, and misuse of

---

[13] There are minor changes in the wording and time frame between certain subpoenas, but these two requests appear in some form in each subpoena. Dkt. Nos. 1-1, 29-1.

corporate funds for personal and family expenses. *See* Dkt. No. 3 at 7–51. To the extent Applicant seeks documents establishing the Lopezes' liability for the wrongful acts alleged in the RMI Action, or the damages caused thereby, such documents are discoverable and are properly the subject of a Section 1782 request. *See Bank of Crete*, 1989 WL 46587, at *1. Evidence, for example, that Intervenors made a deposit in or a transfer to a United States account in a sum equivalent to the amount alleged to have been embezzled, at or around the time of the alleged embezzlement, plainly would fall within the scope of Section 1782. Other documents called for by the subpoenas regarding transactions by those believed to have been involved in the embezzlement or their family members might also "be useful in the [RMI Action] with respect to [the Lopezes'] liability as alleged by NSAL in the [RMI Action]," as Applicant asserts. Dkt. No. 4 at 6.

However, the subpoenas sweep beyond seeking information useful for establishing liability and damages. Applicant asserts that the subpoenaed documents are necessary because "there is currently no meaningful security for these claims and the ability to easily move and transfer money in today's world necessitates that Petitioner take measures to locate and secure funds which have been stolen from it." Dkt. No. 32 at 22. That articulated basis appears to presuppose that the discovery sought would aid a foreign attachment or enforcement proceeding in connection with a judgment of the RMI High Court that has not yet been obtained and may never be obtained. *Cf. Ativos Especiais II*, 2024 WL 4169550, at *8. There has been no showing that such a proceeding is reasonably anticipated. *Id.* To the extent the subpoenas seek extraneous financial information or information relevant only to matters such as the Lopezes' ability to pay a judgment, the subpoenas are overbroad. *See Insured Advoc.*, 2024 WL 4893580, at *3; *Vincent*, 2012 WL 6622707, at *1; *see also Morelli v. Alters*, 2020 WL 6508858, at *6 (S.D.N.Y. Nov. 5, 2020)

(quashing subpoenas to financial institutions seeking similarly broad information regarding the plaintiff's finances over an extended period of time).  For example, where Applicant merely seeks to assure itself of the current location of the allegedly ill-gotten funds, such documents are not relevant to the RMI Action.  *See Equinox Gallery Ltd. v. Dorfman*, 2018 WL 637764, at *3 (S.D.N.Y. Jan. 22, 2018); *In re Asia Mar. Pac. Ltd.*, 253 F. Supp. 3d 701, 706–07 (S.D.N.Y. 2015).

The fourth *Intel* factor weighs against Applicant, though not incurably so, as the subpoenas may be narrowed to be made more proportional to the needs of the case.  *See Malev*, 964 F.2d at 102 (noting that when evaluating a Section 1782 application, "the district court can utilize its powers under the Federal Rules of Civil Procedure to lessen significantly the burden of handling this discovery").  The Second Circuit has instructed that "it is far preferable for a district court to reconcile whatever misgivings it may have about the impact of its participation in the foreign litigation by issuing a closely tailored discovery order rather than by simply denying relief outright."  *Mees*, 793 F.3d at 302 (quoting *Euromepa*, 51 F.3d at 1101).  "Thus, to the extent a district court finds that a discovery request is overbroad, before denying the application it should ordinarily consider whether that defect could be cured through a limited grant of discovery."  *Id.* Here however, that would require entirely rewriting Applicant's document requests.

### E.    Summary

Taken together, the discretionary factors counsel in favor of granting Intervenors' motion to quash the subpoenas as those subpoenas are currently drafted.  Although there is no indication that the RMI High Court would be unreceptive to the discovery or that NSAL's Section 1782 application is an attempt to circumvent the RMI's proof-gathering restrictions, the facts that much of the requested discovery should be directly available from the defendants in the underlying action and that the subpoenas, as drafted, are overbroad, recommend against permitting the discovery requests to go forward in their current form.  However, because the Second Circuit has instructed

district courts to consider whether a subpoena's overbreadth "could be cured through a limited grant of discovery," *id.*, the Court will permit Applicant to submit revised proposed subpoenas that are more narrowly tailored to the claims advanced in the RMI Action within fourteen days of this Opinion and Order.   Applicant may submit a memorandum of law in support of the revised subpoenas that is no longer than five double-spaced pages.  The Intervenors may respond with a memorandum of law that is no longer than five double-spaced pages within seven days thereafter.

## CONCLUSION

Intervenors' motion to quash the subpoenas is GRANTED in part.  Applicant may submit revised proposed subpoenas within fourteen days of this Opinion and Order.  Intervenors may respond within seven days thereafter.

The Clerk of Court is respectfully directed to close Dkt. No. 27.


SO ORDERED.


Dated: February 3, 2025
      New York, New York                    _____
                                                    LEWIS J. LIMAN
                                              United States District Judge